CLARK *vs.* MERRIAM.

The defendant, by an indorsement in blank, had guarantied a note payable in one day from date. The plaintiff alleged in his declaration that the defendant by such indorsement had promised that the note should be collectible for a reasonable time, and introduced parol evidence to prove such promise. The jury returned a verdict for the plaintiff and the defendant moved for a new trial for a verdict against evidence. Held, 1st. That though the indorsement, taken by itself, imported a guaranty that the note should be collectible when due, yet that it was but *prima facie* evidence of the defendant's agreement, which might be shown by parol evidence to be of the character alleged. 2d. That the jury might infer this agreement from the circumstances under which the note and guaranty were taken, and which clearly showed that a credit for more than one day was intended.

Notice to such a guarantor of the default of his principal before bringing suit, is not necessary.

What is unreasonable delay in bringing suit against the principal in such a case, must depend on circumstances indicating the intention of the parties.

Whether, where there is no proof of such intention, it be not a reasonable rule that the holder is not bound to sue till requested by the guarantor. *Qu.*

THIS was an action of assumpsit by Belina Clark against Noah Merriam as guarantor of the following note.

" WEST MERIDEN, April 2, 1853.

" $300. One day after date I promise to pay to the order of Belina Clark, three hundred dollars at my store in cash, value received.                         LEVI MERRIAM."

Endorsed—" NOAH MERRIAM."

The plaintiff in his declaration alleged that on the 1st day of January, 1853, one Levi Merriam and one Beloster Clark, then and for a long time before copartners in trade, dissolved their copartnership, at which time said firm was indebted to the plaintiff in the sum of $800, for money previously lent to be used in their copartnership business, and remained so indebted until the 2d day of April, 1853, when it was agreed between said Clark and said Levi, that said Clark should pay the plaintiff the sum of $500, and the said Levi the sum of $300, in satisfaction of the debt; and that in consideration that the plaintiff, at the special request of said Levi and the defendant, would postpone and delay the payment of said sum of $300, the said Levi executed and delivered

to him the above note; and that in consideration of the premises, the defendant did then and there, by his indorsement on the back of said note, undertake and faithfully promise the plaintiff that said note should be good and collectible for a reasonable time thereafter; that the defendant did not at any time after the execution of said note require the plaintiff to collect the same of said Levi, nor give him notice that he was no longer willing to be holden for the collectibility of said note; that the plaintiff, by the consent of the defendant, did forbear, and gave day to said Levi for the payment of said note, until the 26th day of November, 1853, when said Levi became insolvent, and wholly destitute of property, and that said note was not, nor had since been collectible of said Levi, and remained wholly due and unpaid, of all which the defendant on said 26th day of November, had notice.

The case was tried to the jury on the general issue at the term of the superior court holden in the county of New Haven, in December, 1856.

On the trial the plaintiff testified as follows: " I am the owner of the note. In August, 1852, I lent Clark and Merriam $800. In the spring after, they wanted to close business, and Levi Merriam said that he would pay $300 of it, and that Clark, who is my son, would pay $500. He wanted me to wait a few days, or a short time, and would give me good security. I told him I should like the money, but could get along. He gave me the note. I told him I wanted it drawn the same way as the old note, (alluding to a joint and several note signed by the said Levi and Noah, and then held by the witness,) as principal and surety. I told him I did not want the note. He said it was good, just as good as the old one. I took the note. The second or third day after it was given, I told the defendant it was due, and should be paid. He said, I will tell Levi what you say, and he will make it all right with you. Levi afterward said, if I would wait, he should like it, that he wanted to use his money; and it passed along from time to time. Levi Merriam failed 26th November, 1853."

Beloster H. Clark testified as follows : " I am son of the plaintiff, was in the co-partnership with Levi. We were indebted to father in the sum of $800. I gave him my note for $500, and Levi his note for $300. Levi handed it to father. Father declined to take it. Levi said it was as good as the old one, and would be paid soon."

It was admitted that the indorsement was made by Levi Merriam, in the name and by the direction of the defendant, who was his father ; and that the defendant at the time was blind, or nearly so : also, that at the time the note was given, Levi was in good credit, and had ample property, real and personal, to pay the note, and so continued till the 26th of November following, when he failed in business and became insolvent, and had so continued to the time of the trial.

On the foregoing evidence the jury returned a verdict in favor of the plaintiff, and the defendant moved for a new trial for a verdict against evidence.

*R. I. Ingersoll* and *Platt*, in support of the motion.

1. The legal effect of the defendant's indorsement is, that the note being payable on time, shall be good and collectible when due by the use of due diligence. *Castle* v. *Candee*, 16 Conn., 223. In such case the plaintiff is bound to commence a suit by attachment against the maker, if property can be found, as soon as the note becomes payable. 1 Swift, 435, and authorities there cited. But the plaintiff sets up a different contract. It is, that the defendant, by his indorsement, agreed that the note should be good and collectible for a reasonable time, irrespective of the time named for payment in the note itself. There is nothing in the evidence to sustain any such allegation. The indorsement was made by Levi as agent of the defendant, and his authority went no further than to indorse the note in the usual way, the legal effect of which is entirely different from the promise averred. That Levi told the plaintiff that the note so indorsed was just as good as the joint and several note,

can not alter the case, for there was no evidence of any authority from the defendant, to obligate him in any such way.

2. Even if Levi had been authorized by the defendant to give that effect to his indorsement, that is, to make it as obligatory as the old note; it would not sustain the averment. The old note was a direct promise of payment in a given time, but the declaration sets forth a guarantee for a reasonable time.

3. If there was such a guarantee, the delay of the plaintiff to take any measures to collect the debt out of the maker, from April, when the note fell due, till after the failure of the maker in November following, was unreasonable.

4. There was no evidence of notice to the defendant before the commencement of the suit. But the contract of guarantee, if there was any such, entitled the defendant to notice before he was sued. This is expressly so laid down in 1 Sw. Dig., 435, et. seq.

*Buell* and *Doolittle*, contra.

The verdict is not against the evidence.

1. It was admitted that Levi Merriam had authority as agent of the defendant to make the indorsement in question.

2. The defendant was not present when the contract was made.

3. The contract was therefore such as Levi Merriam, the agent, did in fact make ; and in the absence of any evidence to the contrary, the presumption is that the agent had authority to make such contract, and so the jury had a right to infer.

4. The contract was a guarantee of the note beyond the time specified in it, and this is proved by all the testimony. By that of the plaintiff and his son ; by the declaration of Levi Merriam that the note was as good as the old one ; and by the defendant's recognition of the contract as claimed by the plaintiff.

5. The verdict far from being against the evidence, is abundantly sustained by it. *Clark* v. *Whitaker*, 19 Conn., 319. Citing also generally, *Bulkley* v. *Waterman*, 13 Conn.,

328, *Castle* v. *Candee*, 16 ib., 224, and *Lockwood* v. *Craw-ford*, 18 ib., 361.

ELLSWORTH, J.   It is claimed in this case, that the verdict is without evidence and positively against evidence.

It is said that if the plaintiff will follow up and support his declaration, he must prove "that the defendant did then and there by his indorsement on the back of said note, undertake and faithfully promise the plaintiff that said note should be good and collectible for a reasonable time there-after," and further that the plaintiff had used due diligence, and given the defendant notice before bringing the action.

The first claim is that there is a variance between the proof and the allegation; that the allegation is that the guaranty is for a reasonable time, while the proof is that the guaranty is for one day.   The argument is, that inas-much as the note is drawn payable in one day, the guaranty is necessarily of the same import, although it is in blank. But we do not think this a necessary inference.   It may be *prima facie* of this import, but is not conclusively so, nor does the form of the indorsement preclude parol proof of what the contract was as to the time to which the warranty was to extend.

The face of the note presents the contract of the drawer of the note, and the indorsement proves that of the guar-antor, when filled up according to the agreement of the parties.   And although in the absence of all proof *aliunde*, the latter may be inferred from the former, it may be proved to extend to a longer period, if it was so intended.   This was declared to be the law in *Beckwith* v. *Angel*, 6 Conn., 316.   *Perkins* v. *Catlin*, 11 ib., 213.   *Castle* v. *Candee*, 16 ib., 223, and 1 Sw. Dig. 433.

If this is the rule, then the inquiry here is, was the evi-dence offered relevant to the issue; and if so, from it might not the jury find that the note was guarantied for a reason-able time, rather than for one day only?

The circumstances show that a guaranty for one day was not the guaranty in the contemplation of the parties.   The

maker of the note was then in good circumstances and credit, and why was a guaranty for one day asked for? The creditor, Belina Clark, was, as a matter of personal accommodation, about to divide the note of $800 due him from Clark and Merriam, so that Clark might give his note for $500, and Merriam his for $300. The very object of this was to give a reasonable time to the two debtors who were about dissolving their partnership. Had the note been made payable with interest, as in *Castle* v. *Candee*, that circumstance as there held, would have proved that forbearance was contemplated, though the note itself was payable on demand; but is this endorsement under the circumstances less indicative of intention than that? This note is payable one day from date as a matter of accommodation and not for immediate payment, for if that was intended, the old note would have been collected at once. One day was inserted most probably, because the draftsman had the idea, somewhat prevalent, that without a fixed time of payment the note would not draw interest. It should require clear proof, that a note drawn and guarantied as this was, under the circumstances, was not intended to lie some reasonable and convenient time, but be instantly paid.

Besides, the guaranty of this note was made by the hand of Levi Merriam, the authorized agent of his father the defendant, and he very well knew that the note was to lie, and the jury might well presume that the father knew it likewise. The father's reference to his son, saying, "I will tell Levi what you say and he will make it all right with you," is evidence that the father had authorised his son to act in his stead, in any manner that would most promote his interest.

As to the reasonableness of the forbearance which was given, we think that the jury might well find as they have. The defendant learned the existence of the note within two or three days after it was given, and that it was unpaid and might remain so, when he referred to his son as the person who would arrange the business to the satisfaction of the creditor. The debtor as the jury might have found, let the

note lie unpaid, with the knowledge and consent of the father.

Now what is a reasonable delay, where the note is payable on demand, or one day after date, and where there are no circumstances to prove the intention of the parties, we have no occasion to decide. The cases are not uniform. In the case of *Castle* v. *Candee*, the court declined to lay down a uniform and absolute rule, preferring to decide each case as it might arise ; but Judge Waite thought the rule ought to be, that until a request to bring suit was made by the guarantor of a note payable on demand, the delay was not unreasonable. This may be as satisfactory as any other general rule, but as we are not called upon to establish any rule, we prefer to follow the example of the court in *Castle v. Candee.* This verdict can stand well enough without any rule. There is in most cases no great difficulty in ascertaining the real intentions and expectations of the parties, and these should be inquired after, and followed when satisfactorily established by proof.

It is said there is no evidence that notice of the default was given to the defendant before suit brought. Had this been a negotiable note, there must have been a regular demand and notice, but this is a mere guaranty by a stranger, and in such a case the diligence required by law is the immediate institution of a suit by attachment, if the maker of the note is possessed of property.

We are not aware that any notice from the plaintiff is necessary in such a case as this. It is the duty of the guarantor to notice the default himself, for knowledge of that fact is not peculiar to the plaintiff, as this court decided in the cases of *Ward* v. *Henry*, 5 Conn., 595, and *Hammond* v. *Gilmore*, 14 Conn., 479.

But if the law were otherwise, and notice before suit was held to be necessary, we think the jury were fully authorized from the evidence in the case, to find that the defendant had knowledge of the failure and default of his son, long before this suit was instituted.

We do not advise a new trial.

In this opinion the other judges, STORRS and HINMAN, concurred.

New trial not advised. ·