## WILLIAM VAN DOREN, Respondent, *v.* A. W. TJADER, J. D. WINTERS et al., Appellants.

There can be no strict indorsement of a negotiable promissory note, except by the payee or indorsee.

The contract of guaranty to be effectual must be in writing, and must express *the* consideration upon which it is based. Where, therefore, a stranger to a promissory note endorses it in blank at the time of its execution, though he be a guarantor of the note, yet he cannot be holden upon it where there is no such contract in writing expressing the consideration for his undertaking.

A guarantor of a promissory note will not be discharged by the failure of the holder to demand payment and give strict notice of non-payment. Reasonable notice of the dishonor of the note is all that he is entitled to.

A contract of guaranty, though made at the time of the principal contract and upon the same consideration, must, nevertheless, be in writing, signed by the party to be changed, and must express the consideration which sustains it.

If an appellate Court finds in the investigation of a case that the facts stated in the complaint, with all legal intendments in its favor, will not support the judgment, the Court can do no less than reverse such judgment, although counsel may not have hit on the proper grounds for asking a reversal.

Where the terms and conditions of an agreement are set out in a complaint, and the violation of that agreement is charged against the defendant; if it is such an instrument as the law requires to be in writing and the complaint is silent as to whether it was oral or written, Courts will presume it to be a lawful or written agreement until the contrary is shown.

The party demurring admits the truth of whatever is contained in the complaint and nothing more. A demurrer does not admit new facts.

The promise to answer for the debt of another, and the consideration for that promise, need not be contained in the same paper, provided the signature of the guarantor can be connected with both.

A note imports consideration to the maker, but it does not import a consideration for a guaranty of its payment by a third party.

The intent of the statute of frauds seems to be that the writing itself, without extraneous evidence, should show the consideration for the guaranty.

Appeal from the District Court of the Second Judicial District, State of Nevada, Ormsby County, Hon. S. H. Wright presiding.

On the 27th day of January, A. D. 1864, the defendant Tjader, executed and delievered his promissory note to the plaintiff, Van Doren, by which, in thirty days after date, he promises to pay the sum of three hundred dollars.

Before the delivery of this note the defendants, Hopkins and Winters, for the accommodation of Tjader, indorsed it in blank. The plaintiff brought this action against the defendants, and claims that defendants Hopkins and Winters are

holden as joint makers of note with Tjader.    It is alleged in the complaint "that the defendants J. D. Winters and Peter Hopkins, signed said note as sureties thereon, and became and were original parties thereto, and joint makers, by the indorsement of their names upon the back thereof at the time of the execution thereof, and before the delivery of the same to the plaintiff."    The defendants Winters and Hopkins demurred to the complaint, which being overruled and judgment entered in favor of the plaintiff, they appeal.

*Atwater & Flandreau,* Attorneys for Appellants.

The Court below erred in overruling the demurrer to the complaint in this.

It appears upon the face of the complaint that the defendants Hopkins and Winters were not primarily liable on the note, but only liable, if at all, in the secondary and conditional character of endorsers or guarantors.    Their names were written on the back of the note, which in itself is conclusive of their intention to assume the character of endorsers. The fact that they placed their names there before the note was delivered to the payee, makes no difference in the secondary character of their obligation.

They had no notice of the dishonor of the note.

This has been the uniform ruling in California, and is the most consonant with law and reason.    That State holds that a party bearing such relation to commercial paper is a guarantor, and that a guarantor is entitled to the same notice of dishonor as an indorser.    And we would ask why should he not have the same notice?    He certainly is but a surety, and equally interested in securing himself against the insolvency of his principal.    A contrary doctrine is unphilisophical. Upon this point see the following cases in California:    (*Riggs* v. *Waldo,* 2 Cal. 485 ; *Clark* v. *Smith et al.* 2 Cal. 605 ; *Lawrence* v. *Lightstone,* 4 Cal. 277 ; *Bryan* v. *Berry,* 6 Cal. 394 ; *Pierce* v. *Kennedy,* 5 Cal. 138 ; *Brady* v. *Reynolds,* 13 Cal. 31 ; *Geiger* v. *Clark,* 13 Cal. 579 ; *Reves* v. *Howe,* 16 Cal. 152.)

A great deal of legal chicanery has been indulged in by the Courts to change the character of contracts entered into by

parties into something they never designed. But the State of California took a just view of the subject at the outset, and has steadily adhered to it ever since. Where the paper imports a secondary or conditional obligation, they do not permit it to be changed by parol, and *vice versa.* (*Kritzer* v. *Mills*, 9 Cal. 21; *Haskell* v. *Cornish*, 23 Cal. 256.)

We are free to admit that cases may be found in several of the States that hold the contract of indorsement may be changed by parol into that of maker, but we deny that these cases rest upon any principle or reason, and insist that they contravene the most familiar rule of law, to wit: that a written contract cannot be varied by parol.

This legal heresy had its origin in the case of *Josselyn* v. *Ames* (3 Mass. 274), and has been followed in some of the States. New York was led into the error in a few of her early decisions, but in her more recent and better considered cases the doctrine has been utterly repudiated as unsound and dangerous. (*Seabury* v. *Hungerford*, 2 Hill, 80; *Hall* v. *Newcomb*, 7 Hill, 416; *Ellis* v. *Brown*, 6 Barb. 282; *Ellis* v. *Brown*, 23 Barb. 534; *Spies* v. *Gilmore*, 1 Comst. 321.)

In this last case Justice Bronson disposes of all the cases in which endorsers have been held as makers in the summary manner which they deserve, and shows that the State of New York has returned to the first and correct principles.

See also Story on Promissory Notes, section 133, and cases cited, where a party signing as the appellants did, is held to be a guarantor.

The insolvency of the maker of the note, set up in the complaint, is no excuse for not notifying the indorsers. (1 Parsons on Bills and Notes, 528; *Mechanics' Bank* v. *Griswold*, 7 Wend. 165–9; *Jackson* v. *Richards*, 2 Caine's R. 343.)

The judgment should be reversed.

*Clayton & Clarke*, for Respondents.

The contract of an indorser is as follows:

*First*—That the instrument indorsed and the antecedent signatures are genuine.

*Second*—That he, the indorser, has good title to the indorsement.

*Third*—That he is competent to bind himself by the indorsement, as indorser.

*Fourth*—That the maker is competent to bind himself to the payment, and will, upon due presentment of the note, pay it at maturity.

*Fifth*—That if when duly presented it is not paid by the maker he, the indorser, will, upon due and reasonable notice given him of the dishoner, pay the same to the indorsee or holder. (Story on Promissory Notes, sec. 135.)

The contract of Hopkins and Winters is entirely different in all essential particulars from that of an indorser. They were not parties to or holders of the note. Their undertaking was not collateral but original. It was supported by the original consideration. It was made before the instrument was delivered to the payee. It differs in no particular from the contract of a joint obligor, except in the place of signing, which we have seen is not material. (Story on Promissory Notes, sec. 121.)

The contract of a guarantor differs from that of an indorser in this: "Punctual presentment for payment and punctual notice of dishonor are not indispensable to charge him whereas, both are ordinarily indispensable to charge the indorser." (Story on Promissory Notes, sec. 460.)

The contract of surety is entirely different from that of an indorser or guarantor. His undertaking is original and not collateral, absolute and not conditional.

Winters and Hopkins were original parties to, and several makers of, the instrument. (Storey on Promissory Notes, sec. 473, and note 1; 3 Mass. 273; 11 Mass. 436; 9 Mass. 314; Parsons on Contracts, 206, vol. 1; 3 Met. 275; Parsons on Notes and Bills, vol. 2, p. 3, 119 to 126; Storey on Notes, secs. 58, 59; 13 Metcalf, 262; 1 Hill, N. Y. R. 256; 4 Hill, 420; 19 Wend. 202; 24 Wend. 35; 26 Wend. 430.)

The transaction under consideration is not uniformly held to be an original undertaking. The Courts are divided upon the question. California at an early day held it a guarantee requiring demand and notice; but subsequently, while confirming the ruling, conceded it not well supported in reason. (2 Cal. 486; 5 Cal. 138; 13 Cal. 579.) Notwithstanding the

diversity of opinion the principle is clearly settled by the weight of authority.   (3 Kent, 124; 1 Parsons on Contracts; Story on Notes.)

Where at the maturity of a promissory note the maker is insolvent (as is alleged the maker in this case was), demand of payment and notice of dishonor are not necessary to charge a guarantor.   (Story on Notes, sec. 460; 8 Pickering, 423; Parsons on Notes and Bills, 136, 137, 138, 139, note C, p. 137; 2 American Leading Cases, 112, 113, 118, 120, 121; *Douglas v. Reynolds*, 9 Peters, 113 to 129.)

Failure to make demand of payment and give notice of dishonor to a guarantor will only avail the guarantor as a defense when he has sustained actual loss or injury by reason of the laches of the holder, and then only to the extent of the loss or injury.   (2 American Leading Cases, 118, 119, 120, 121; 25 Alabama, 139; 11 Metcalf, 563; 10 Howard, 461.)

Opinion by Lewis, C. J., full Bench concurring.

This action was brought to recover the sum of three hundred dollars on a promissory note, which it is alleged in the complaint was on the 27th day of January, A. D. 1864, executed and delivered by the defendants to the plaintiff.

It is further alleged in the complaint that the defendants, Winters and Hopkins, signed the note as sureties; that they became and were original parties thereto, and joint makers by the indorsement of their names upon the back thereof, at the time of its execution and before the delivery of the same to the plaintiff.

It is also alleged that the defendant Tjader, at the time of making the note, and continuously since that time, has been, and now is, wholly insolvent, and that there is now due plaintiff from the defendants on said note the sum of three hundred dollars.

To this complaint the defendants, Winters and Hopkins, interpose a demurrer, assigning as grounds therefor that the complaint does not state facts sufficient to constitute a cause of action against them, in this:

*First*—That it appears by the complaint that they are not

primarily or originally liable on the note, but only secondarily and conditionally liable thereon as sureties for the maker, and have not been notified of the presentment to, demand of payment of, and refusal of payment by the maker.

*Second*—That it appears from the complaint that the defendants, Winters and Hopkins, are indorsers, and not original makers of the note, and that no demand and notice is alleged.

*Third*—That it appears from the complaint that they signed the note as guarantors, and not as makers, and that it is not alleged that they have ever been notified of the non-payment and dishonor thereof by the maker, A. W. Tjader.

Two points are presented for investigation in this case:

*First*—What character does an irregular indorser in blank, of a negotiable promissory note, who signs his name upon the back at the time of the execution and delivery, occupy—whether he is to be treated as an original maker, a strict indorser, or as a guarantor; and

*Second*—What are his responsibilities?

The authorities, it must be admitted, are irreconcilably conflicting, and it cannot be said that any rule is now definitely settled; indeed, the only fact fully determined by the authorities is, that nothing at all has been settled. The earlier decisions in New York uniformly held an irregular indorser liable as the maker of the note. (*Marrow* v. *Durham*, 3 Hill, 584; *Sequor* v. *Prosser*, 1 Ib. 256; 4 Ib. 420; *Miller* v. *Gaston*, 2 Ib. 188; *Hough* v. *Gray*, 19 Wend. 202; *Kitchell* v. *Burns*, 24 Ib. 456; *Allen* v. *Rightmire*, 20 John. 365.) But all these cases have subsequently been overruled, and an irregular indorser in blank, signing his name upon the back of a negotiable note at the time of its execution, is now held in that State to be an indorser, entitled to strict notice, and discharged by the failure to present for payment, and to give strict notice of non-payment. (*Spies* v. *Gilman*, 1 Comst. 321; *Ellis* v. *Brown*, 6 Barb. 282; *Waterbury* v. *Sinclair*, 26 Ib. 425; *Cottrell* v. *Conklin*, 4 Duer, 45.)

This same doctrine has been recognized in some other States, but no satisfactory reason is given for holding that an entire

stranger to a note, and one who never had an interest in it, should be held only as an indorser.

These decisions are also in direct conflict with the general rule that there can be no strict indorsement of a negotiable promissory note, except by the payee or an indorsee.

The rule requiring the presentment for payment to the maker, and strict notice of non-payment to the indorser, in general embodies no principle of justice to recommend it to the favorable consideration of the Courts. And as the strict legal rules governing the duties and liabilities of indorsers often work hardship and injustice, they should not be extended so as to embrace cases not already clearly within their scope. To extend it, therefore, to a class of cases not clearly within its scope would be abandoning the manifest purpose and spirit of the law for its rigorous rules.

The general rule governing the responsibilities of guarantors, on the other hand, is founded upon the clearest principles of equity, and has that at least to recommend its adoption where any doubt exists as to what rule should be followed.

In many of the States an irregular indorser in blank is *prima facie*, regarded as a guarantor. (*Klein* v. *Currier*, 14 Ill. 237; *Webster* v. *Cobb*, 17 Ib. 459; *Carroll* v. *Weld*, 13 Ib. 682; *Camden* v. *McKey*, 3 Scam. 437; *Cushman* v. *Demrut*, Ib. 497; *Smith* v. *Finch*, 2 Ib. 321; *Carr* v. *Rowland*, 14 Texas, 275; *Cook* v. *Southwick*, 9 Ib. 615; *Watson* v. *Hart*, 6 Gratt. 633; *Clark* v *Melvain*, 25 Conn. 576; *Beckwith* v. *Angell*, 6 Ib. 315; *Perkins* v. *Cutler*, 11 Ib. 213.) And this certainly seems to be much the most reasonable rule. The intention of the parties to a contract is always the object which is to govern the Court in its interpretation, and in ascertaining the rights and obligations of the parties to it. If this rule should be recognized in these cases it would be difficult to see how a person not a party to a negotiable note, signing his name upon the back of it, could be treated as a maker. The very fact of the name being indorsed upon the back would be some evidence at least against the presumption of his intention to become primarily liable as a maker of the note. Deeming the position of guarantor in a case of this kind most consonant with justice, reason and the intention of

the parties, we feel bound to follow the rule as laid down in *Klein* v. *Currier* (14 Ill.) and the cases above cited; though under the statute of this State a mere indorsement in blank is not sufficient to establish the liability of such guarantor.

The authorities in California which hold that a guarantor is entitled to strict notice as an indorser are counter to the long and well established rules in all the other States, and we have, therefore, no disposition to follow them.

With the exception of the decisions of that State, it is uniformly held that reasonable notice of demand and non-payment only is required, and even that is not required where the maker is insolvent at the time the note becomes due. (*Lewis* v. *Brewster*, 2 McLane's Rep. 21; *Fooot & Bowles* v. *Brown*, Ib. 369; 3 Kent, 121.)

The contract of guaranty is a separate and independent contract involving duties and imposing responsibilities very different from those created by the original contract, to which it is collateral.

It is a promise "to answer for the debt, default or miscarriage of another," and by the statute of frauds it is made void unless there be some note or memorandum thereof in writing, expressing the consideration upon which it is based; and for those reasons it has frequently been held that a guarantor cannot be jointly liable with the maker of a note, nor joined in the same action; but section 15 of our Practice Act ignores this rule, and expressly authorizes the joinder of a guarantor and the original obligor in the same action.

The contract of guaranty must, however, be in writing, signed by the party to be charged, and must express the consideration. A mere indorsement in blank is not sufficient, nor are any words which do not express the consideration upon which the agreement rests. It has frequently been held by some of the highest Courts of this country, that when the guaranty of a promissory note is simultaneous with the making thereof, that the consideration of the note will sustain the guaranty; and as the holder of the instrument has the right to fill up the contract in accordance with the intention of the parties, an irregular indorsement in blank was sufficient to answer the requirements of the statute. Whether those

decisions were correct or not, under the statutes upon which they were based, is a question of no consequence here, for the same Courts which established that rule have subsequently, upon the amendment of the statute so as to make it like ours, held that the strict letter of the statute must be followed; that the contract of guaranty, though made at the time of the principal contract, and upon the same consideration, must be in writing, and must express the consideration which sustains it. These authorities are directly in point here, and clearly follow the plain letter of the statute. (*Brewster* v. *Silence*, 11 Barbour, 144; *Glen Cove Mutual Insurance Co.* v. *Harrold*, 20 Barbour, 298.) There are cases in California where it is held that the consideration expressed in the original obligation is sufficient to sustain the contract of guaranty made simultaneously with it, but none of them go so far as to hold that a mere indorsement in blank answers the requirements of the statute.

The complaint in this action clearly shows that there was no such agreement or memorandum in writing as the law requires on the part of Winters and Hopkins, but only that they indorsed their names upon the back of the note at the time of its execution.

The demurrer is therefore well taken, and the judgment of the Court below must be reversed.

---

## RESPONSE TO PETITION FOR REHEARING.

Opinion by Beatty, J., Lewis and Brosnan concurring.

The respondent in this case petitions for a rehearing, and urges his petition with much zeal and an elaborate reference to authorities.

The Court did not come to the conclusion it arrived at in the case without doubt and reluctance.

We doubted the policy of holding that a party writing his name on the back of a note, under the circumstances stated in this complaint, should not be held responsible for the payment of the note. We found no case in which any Court had here-

tofore held that a party, under such circumstances, was free
from all liability; but, on the contrary, we found that, whilst
such parties were held liable, their liability was placed on three
different and distinct grounds, wholly inconsistent with each
other.   One class of decisions have held that they were not
guarantors nor indorsers, but makers, and bound just as if
they had signed the note on its face.   A second class of deci-
sions has held they were regular indorsers, and bound for the
debt on condition of demand of payment from the maker and
notice to indorser made and given in proper time and form.
A third and perhaps the most numerous class of decisions has
held that a party thus writing his name is a guarantor.

These latter decisions have uniformly held that when the
guaranty was simultaneous with the note, the consideration of
the note was the consideration of the guaranty, and a recovery
could be had against the guarantor, under certain conditions,
such as that the maker was insolvent, that a proper effort had
been made to collect the note of the principal, or something of
that kind.   The decision of this Court is divided into two
main branches:

*First*—That appellants were guarantors, and not makers or
indorsers.

*Second*—That being guarantors, they were not legally bound,
because their guaranty was not in writing expressing the con-
sideration therefor.

The first proposition we think sustained by reason and a
multitude of authorities.   We did not determine this point
until after mature reflection and the examination of authori-
ties.   We remain satisfied with our conclusions.

After determining that those thus writing their names were
guarantors, the next question was, what was the nature and
measure of their liability?   Upon this point we were compelled
by the letter of our statute and by the authority of the New
York Courts, interpreting a statute precisely similar in language
to ours, to hold that such guarantors were not bound, because
there was no writing expressing the consideration of the guar-
anty.   It is, however, to be observed that the New York cases
which hold the guarantors not liable, are cases where they
wrote over their names some words expressing the guaranty,

such as: "I hereby guaranty the payment of the above note," or, "I guaranty the payment of the within note," or other words of similar effect.

When the name is written in blank, the later decisions in New York have held the writer of the name to be an indorser. (See cases referred to in the original opinion.)

There is, then, *no one* decision sustaining both the legal propositions laid down by this Court in this case. But there is a large class of opinions sustaining the first proposition, as to the parties being guarantors, and a less numerous, but perfectly satisfactory class sustaining the other proposition; *that if guarantors*, they are not bound for want of a consideration expressed in writing.

After this explanation of the difficulties we had to encounter in coming to a conclusion in this case, we will notice those particular objections to the opinion which are urged in the petition for a rehearing.

It is urged that the point on which this case was decided appears for the first time in the opinion of the Court. That it was not raised by the demurrer, nor urged on the argument of the case.

It is certainly true that this point was not urged in the argument. It was only urged that defendants were not makers, but only indorsers or guarantors. If they were to be considered indorsers, they were not liable for want of demand on principal and notice of non-payment, and if as guarantors for want of notice of dishonor before suit, etc. But the demurrer was because the complaint did not state facts sufficient to constitute a cause of action.

If this Court finds in the investigation of a case that the facts stated in the complaint, with all legal intendments in its favor, will not support the judgment, we can do no less than reverse it, although the counsel for appellants may not have hit on the proper grounds for asking a reversal. In this case appellants urge they are only guarantors, and not bound, *because* they were never notified of the dishonor of note by principal.

The Court holds with appellants that they were only guarantors, and hold that as such they were not bound, but for a

different reason than that assigned by counsel. This Court cannot refuse to reverse an erroneous judgment because it differs from counsel in the course of reasoning by which it arrives at the same result.

The petition suggests that it does not appear by the pleadings that Hopkins and Winters were to answer for the debt, etc., of another, and makes a quotation from the complaint, showing that it is charged they executed the note as makers, etc. But immediately following the declaration that they made the note, is the allegation that they made it by indorsing their names on the back of it. The whole complaint must be taken together, and we held, and still hold, that this latter clause shows they did not make the note, but that such an indorsement amounts only to a guaranty. When the complaint is analyzed, it first says they made a note, then it says that they did not make it; thirdly, it says they wrote their names on the back of a note, but fails to state the legal effect of so writing their names. If this complaint fails to show appellants were answerable for the debt, default or miscarriage of another, it fails to show they were answerable for anything. The next position stated in the petition is: "That the pleading is not demurrable unless it affirmatively appears," etc. "That the promise was to answer for the debt, etc., * * of another." "Second—That no note or memorandum thereof expressing the consideration was reduced to writing," etc. Certainly, if a pleading shows that the defendant, for a valuable consideration which is stated in the complaint, promised to pay something to the plaintiff which he had failed to pay, and does not affirmatively show that it was to be paid for the debt or default of another, that shows a *prima facie* cause of action on the part of the plaintiff. And if it so happens that the money was to be paid for the debt of another, the defendant must show that fact by plea or answer. In other words, when a complaint shows a *prima facie* cause of action, you cannot demur because you may suppose a state of facts to exist not inconsistent with those stated in the complaint, which would defeat the action. So, too, where the terms and conditions of an agreement, and the consideration upon which it was entered into, are set out in a complaint, and the violation of that agreement is charged

against the defendant, if it is such an agreement as the law requires to be in writing, and the complaint is silent as to whether the agreement was oral or written, the Court according to a number of adjudicated cases, will hold it to be a lawful agreement; in other words, a written agreement, until it is shown to be otherwise. But these propositions do not help respondents' case. There is no direct allegation in the complaint that Hopkins and Winters promised or agreed to pay plaintiff anything except by executing the note. There is a subsequent allegation, showing they did not execute the note. If they were liable on any other promise, how is it shown? Simply that they wrote their names on the back of a note simultaneously with its execution. This does not show a *prima facie* cause of action against them. Therefore defendants may demur, and there is no necessity for plea or answer. An answer could develop no new fact.

The next point urged in the petition is that appellants admit making the contract, and do not interpose the plea of the statute. The question here is whether the complaint is sufficient to support the judgment. The appellants, having demurred, admit the truth of whatever is contained in the complaint, and nothing more. A demurrer does not admit new facts. Then admitting *arguendo* that if certain things had been done, they would have been liable as guarantors, is not such an admission as can, in any manner, affect the judgment of the Court. It is only admitting that to be law which the Court finds is not law. The authorities cited by counsel refer to *facts* admitted in answers, not to admissions made in argument.

Counsel suggests that there is no substantial difference between our statute of frauds requiring the consideration to be expressed in writing, and the English statute requiring the agreement to be in writing, etc. As the English statute has been interpreted by the English Courts, there may possibly be no substantial difference. There certainly is none unless we draw a distinction between an agreement expressing *a* consideration and an agreement expressing *the* consideration. But as statutes containing language similar to the English statute have been interpreted in some of the States, there is a very great difference. In some States it has been held that if the

Van Doren *v.* Tjader, Winters *et al.*

*promise* of a defendant for the debt of another be in writing, the consideration may be proved *aliunde*. Under this construction of the statute, a guaranty not expressing the consideration would be held good if the complaint averred a good consideration. But if the English construction is held (that the writing must express not only the promise of the guarantor, but some consideration for the promise), or where a statute is passed expressly adopting the English construction, we cannot see how any guaranty of the debt of another can be held good, whatever the consideration of that promise, if it be not expressed in writing. We are satisfied, as counsel urges, that the promise to answer for the debt of another, and the consideration for that promise, need not be contained in the same paper, provided the signature of the guarantor be connected with both. But one or more papers signed by the guarantor must show the consideration of his guaranty.

Now, in this case, admitting the names written on the back of the note connected appellants with all that was written on the face, is there anything on the face of the note showing the consideration of their guaranty? A note imports consideration to the maker, but it does not import a consideration for a guaranty of its payment by a third party. The intent of the statute seems to have been that the writing itself, without extraneous evidence, should show the consideration for the guaranty. How could one, from reading this note and seeing the names written on the back of it, ever infer that the guarantors had received a consideration for writing their names, or that the payee had ever parted with any right to induce them to write their names?

The apprehension expressed by counsel, that the decision in this case will overturn the whole doctrine of liability of indorsers of bills of exchange and negotiable notes, is, we think, unfounded. Where the payee or indorsee of a note or bill indorses it and puts it in circulation, it is in effect a sale of negotiable paper, and in selling it he guarantees if it is not paid he will take it up. The primary object of the guarantee is to effect the sale of his property. It is not to become the surety of another. Such contracts do not come within the spirit of the act, and never have been, and probably never will be held to come within its operation.

It is suggested that our statute of frauds is a literal copy of the statute of California, and being adopted from the statute of that State, we are by a well established doctrine bound to take the California construction of the statute. This is certainly the general rule, but liable to some exceptions. When the language of a statute is so plain it will admit of but one construction, we cannot give it another and absurd one, because it has been so construed in a neighboring State. But in this case our statute is a literal copy of the New York statute as well as of the California statute. Why should we be bound to follow the California construction any more than the New York construction? We think the New York Courts have construed the language of the statute according to the natural import and meaning of the language used. On the contrary, the Courts of California have entirely nullified the Act and dispensed with its operation in certain cases. We prefer to follow those Courts that enforce the law as the Legislature has made it, rather than assume legislative functions and modify the law so as to meet our views of what it ought to be in certain cases.

The petition for rehearing is denied.