Kealing *et al. v.* .Vansickle.

* * *

## No. 7097.

## KEALING ET AL. *v.* VANSICKLE.

PROMISSORY NOTE PAYABLE IN BANK.—*Accommodation Indorser.—Presumption as to Liability.—Indorsee.—Payee.*—The liability of one who indorses mercantile paper. before its indorsement by the payee, is *prima facie* that of a strict indorsement, which will not operate in favor of the payee, but of his indorsee only.

SAME.—*Indorsement before Delivery.—Parol Evidence.—Maker.— Surety.*— If such indorsement be made before delivery of the paper, and for the purpose of giving it credit with the payee, it will create a liability, in favor of the payee, *prima facie* of indorsement; but parol evidence is admissible to show that the liability, mutually intended, was that of a maker or surety. *Sill* v. *Leslie*, 16 Ind. 236, distinguished.

SPECIAL FINDING.—*Conclusions of Law.*—The office of a special finding is to state the facts proved, not items of evidence merely; and the statement of legal conclusions, upon such a finding, should embrace matters of law only, and not matters of fact. If, in the finding, items of evidence only are stated, instead of the fact which ought to be found, and if the statement of the legal conclusions embraces matters of law, and also matters of fact which ought to have been found as such, a *venire de novo* will be granted.

From the Marion Superior Court.

*F. M. Finch* and *J. A. Finch*, for appellants.
*L. D. McClain* and *A. F. Denny*, for appellee.

WOODS, J.—The error assigned is that the court at general term erred in reversing the judgment at special term.

The suit was brought by the appellee against the appellants and James A. Kealing, upon a promissory note made by said James to the appellee, whereby one year after date of August 4th, 1875, said James promised to pay to the order of the appellee seven hundred and fifty dollars, value received, payable at Fletcher & Sharpe's bank, at Indianapolis, without any relief from valuation or appraisement laws, with ten per cent. interest. The appellants indorsed their names on this note before its delivery to the payee. The complaint is in several paragraphs, and seeks in one to charge the appellants, as sureties for the maker, in another as guarantors, and in another as indorsers. The court, by request, made a special finding. and stated its conclusions of law thereon as follows:

"That on the 4th day of August, A. D. 1875, the said defendant James A. Kealing delivered to the plaintiff, Vansickle, a promissory note for the sum of seven hundred and fifty dollars, payable twelve months after date, with ten per cent. interest; that said note was commercial paper, payable in bank, and had the name of the defendant James A. Kealing signed at the bottom, and the names of the defendants Samuel Kealing and John Kealing signed on the back thereof; that upon said note, thus signed, the plaintiff loaned said James A. Kealing the sum of seven hundred and fifty dollars, of which said Samuel and John received no part, having signed said note for the accommodation of said James A. Kealing; that the plaintiff did not see said defendants Samuel and John sign said note, nor have any conversation with them, or either or them, until after the maturity of said note, and but a short time prior to the commence-

ment of this action; that said note was not protested at maturity, nor other notice of non-payment thereof given to the defendants Samuel and John; that no part of the principal or interest of said note has been paid; that long after the maturity of the note, and a short time before the commencement of this action, in two different conversations, Samuel and John Kealing stated that they were security for their brother James upon said note; that, in a separate conversation since this suit was commenced, the defendant John stated that he was security for James upon said note; that, a short time prior to the commencement of this suit, both Samuel and John offered to become security for James A. upon a new note running eighteen months, which the plaintiff declined to accept.''

And as matters of law the court finds : ''That said Samuel and John Kealing are *prima facie* endorsers upon said note, and James A. Kealing is the maker; that said Samuel and John endorsed said note before the same was delivered to the payee; that said note has not been negotiated, but is still owned by the payee; that the proof does not show that Samuel Kealing and John Kealing, by their indorsement of said note, intended to bind themselves as sureties, or in any other or different character than as endorsers; that, by the neglect of the plaintiff to notify said Samuel and John of the non-payment of said note at maturity, they were discharged from liability thereon; that said Samuel and John have not, by any new promise or admission, waived their rights to insist upon such discharge from liability in this action; that the plaintiff is entitled to judgment for the full amount due on the note against James A. Kealing, and said Samuel and John are entitled to judgment for costs.''

To each of these conclusions the plaintiff excepted, and filed motions for a *venire de novo*, and for a new trial, and reserved exceptions to the overruling thereof.

The court, at special term, gave judgment according to

the conclusions of law as stated, but this judgment the court at general term reversed as to said Samuel and John Keal-ing, and ordered judgment against them for the full amount due on the note. In explanation of the theory on which the court reached its conclusion, from which one of the judges dissented, we make the following extract from the opinion of the majority of the court: "It is apparent, then, that *prima facie* John and Samuel Kealing were endorsers on the note sued on, and it is also true that this presumption may be removed by parol evidence to the contrary. Do the facts as found by the court establish the relation of these defendants to be sureties rather than indorsers? In our opinion they do. On the one hand is the presumption of the law, unsupported by any circumstance or fact, while on the other is the affirmative evidence of their admissions, that they signed as security for their brother, and for his accommodation alone. The term 'security' is synonymous with 'surety.' * * * In *Sill* v. *Leslie*, 16 Ind. 236, (see, also, *Robison* v. *Lyle*, 10 Barb. 512,) the presumption * * * of the liability of an indorser, and nothing more, was held to be overcome by evidence that the presumed indorser had, in a conversation with the plaintiff, and in response to a question by him, if he did not sign the note, replied: 'Yes, he signed as surety.'

"We are of opinion, therefore, upon the facts as found by the court, that the defendants John and Samuel Kealing assumed the relation of sureties on the note in suit, and as such were not entitled to notice of non-payment thereof, but are liable jointly with their principal, James A. Kealing."

We do not dissent from the proposition of law advanced by the superior court in reference to the *prima facie* liability of the indorser in such cases being controllable by proof that a different liability was intended, *Browning* v. *Merritt*, 61 Ind. 425 ; but we think that a proper analysis of the facts

found will not warrant the conclusion reached, that a different liability was intended by the parties in this case.

In the first place, it is a mistake to say, that, "on the one hand is the presumption of law, unsupported by any circumstance or fact." It is found expressly, that the plaintiff did not see said defendants Samuel and John sign said note, nor have any conversation with them, or either of them, until after the maturity of the note, and but a short time before the commencement of this action ; and as it is the office of a special finding to state what was proven, *Ex Parte Walls,* 73 Ind. 95, it is impliedly found that no communication passed between the parties, showing that said defendants intended to incur, or that the plaintiff intended to accept from them, any other liability than what was apparent from the paper itself.

The character of the contract in question became fixed at the moment of its complete execution, that is, upon its delivery to the plaintiff, and nothing done or said by either party at a subsequent time, could change that character though it might be used as evidence on the subject. Whether the contract was one of endorsement or suretyship depended, not on the intent of one of the parties, but on the mutual understanding and intent of both. This kind of contract is not an exception to the rule which requires the consent of both parties ; and unless, therefore, it is made apparent from the facts found that both the plaintiff and said defendants Samuel and John intended that their liability should be that of suretyship, the conclusive legal presumption is that they all intended a contract of indorsement. The paper, as delivered, evidences that contract, and, in the absence of evidence of a different mutual understanding, must, from necessity, be deemed controlling. Now, it certainly can not be inferred, as a legal conclusion, from the facts found, that there was a mutual understanding between the parties at the time the note was delivered to the plaintiff and

he advanced his money thereon, that the indorsers should be bound by any other contract than that evidenced by the note and indorsements as delivered.

Suppose that, instead of being as it is, the note had contained a clause waiving presentment for payment, protest, and notice thereof, and that the plaintiff was seeking to hold them as indorsers, could it be successfully asserted that on the facts as found (with the exception supposed) said defendants were not indorsers, but sureties only?

*Sill* v. *Leslie*, cited *supra*, does not go to the extent claimed for it. The note in that case was executed in the same form as the note in this case, but the complaint in a single count charged all the defendants as makers. The verdict was general, not special, and on the evidence stated, this court refused to disturb the verdict for the plaintiff. This is by no means equivalent to saying, as matter of law, that such a declaration of one of the parties overcomes the legal presumption arising from the form of the contract. In that case the complaint, which declared on the contract as one of suretyship only, may have been deemed to manifest the plaintiff's understanding that such was the contract, and, the defendant having so declared his understanding, there was evidence on which the jury may well have inferred that the parties mutually so understood the contract when it was made. Indeed, as a question of evidence, arising upon an appeal, the declaration of the defendant, as proven in that case, was in itself, without reference to the complaint, sufficient to sustain the verdict; but this is quite different from saying, as matter of law, that it was sufficient to require the verdict which was found. In the case at bar there is no finding, nor anything in the pleadings, from which it can with any certainty be inferred, that the plaintiff regarded the liability of said defendants as anything else than that of indorsers. The complaint charges them in the three capacities of indorsers, sureties and guarantors, and furnishes no

ground for an inference of the plaintiff's original understanding and intention; and, as already stated, having received the paper, without notice that the indorsers intended anything else than indorsement, the only reasonable, if not the conclusive, presumption would seem to be that he accepted the paper, intending to hold them as indorsers only. This, however, is a question of evidence, to be determined by the court or jury which shall try the case, according to the proof made.

Aside from these considerations, the order of the court in general term, that judgment be given on the special finding for the plaintiff against said Samuel and John, for the full amount of said note, was erroneous.

The special finding and the conclusions of law thereon are not properly constructed. The finding, in part, does not find the fact, but only evidence thereof, and the conclusions of law as stated are not matters of law entirely, but in part are matters of fact which should have been found as such. In so far as the finding shows that the plaintiff did not see said Samuel and John sign the note, and had no conversation with them until after the maturity thereof, and that said defendants stated in two conversations that they were security for their brother on said note, it is a finding, not of fact in any proper sense, but only of items of evidence which tend to show the fact which ought to have been found as such, namely, the capacity in which the parties mutually intended that said Samuel and John should be bound. There was no harm in, though no necessity for, stating these items of evidence in the finding, but without stating the conclusion of the court in reference to the ultimate fact which was in issue, according as the court deemed the evidence to preponderate, the finding was imperfect.

The court did find, "as matter of law," that said Samuel and John Kealing are *prima facie* indorsers upon said note, and that the proof does not show that by their indorsement

they intended to bind themselves as sureties, or in any other or different character than as indorsers ; but their intention in this respect, as well as the intention of the plaintiff, was matter of fact which should have been found as such. It is plain that the finding of it as matter of law is not the equivalent of a finding of the fact as such.

On account of these defects in the finding, and in the statement of legal conclusions, instead of ordering judgment for the plaintiff as against said Samuel and John, the order should have been that the motion for a *venire de novo* be granted as to said defendants.

The judgment is therefore reversed, with costs, and with instructions to grant the motion for a *venire de novo* as to the said defendants Samuel and John Kealing.

## On Petition for a Rehearing.

Woods, J.—A rehearing is asked on the ground that the fact stated in the finding, that John and Samuel Kealing indorsed the note before its delivery to the payee, for the accommodation of James A. Kealing, who alone received of the payee the consideration of the note, is equivalent to a finding that said John and Samuel intended to become, and were accepted by the payee as, original makers, liable jointly with, or as sureties for, said James.

After a careful and painstaking examination of the decisions throughout the United States, and a study of such English cases as they could find, the counsel for the appellee deduce the following rule in reference to the liability of indorsers who sign before an indorsement of the paper by the payee : "Where oral evidence is at all admissible to show the character of the liability of such indorsers, and where the indorsement was made solely to give credit to the maker with the payee, and for the accommodation of the maker, the indorser is regarded holden and bound as a surety for

the maker;" and, concluding the discussion, the counsel add: "In this case it is utterly indifferent to us whether the rule of *prima facie* liability be that of makers or that of indorsers. The vital principle is, that when the indorsement is made with the intention to give the maker credit with the payee, then the liability of the indorser is that of a surety for the maker. And this liability is clearly shown by the special finding here."

The cases cited, and which might be cited, on this subject are numerous, and, if not full of confusion and contradiction, are, in many respects, variant and difficult to harmonize. We shall not attempt the task. See *Chaddock* v. *Vanness*, 35 N. J. 517 ; S. C., 10 Am. Rep. 256 ; *Vore* v. *Hurst*, 13 Ind. 551 ; 1 Daniel Negotiable Instruments, secs. 709–716, and notes. The following are the latest cases, besides our own, cited by counsel: *Jaffray* v. *Brown*, 74 N. Y. 393.; *Coulter* v. *Richmond*, 59 N. Y. 478 ; *Fear* v. *Dunlap*, 1 Greene, Iowa, 331 ; *Billingham* v. *Bryan*, 10 Iowa, 317 ; *Arnold* v. *Bryant*, 8 Bush, 668 ; *Jones* v. *Goodwin*, 39 Cal. 493 ; *Ford* v. *Hendricks*, 34 Cal. 673 ; *Eilbert* v. *Finkbeiner*, 68 Pa. St. 243 ; *Collins* v. *Everett*, 4 Ga. 266 ; *Cogswell* v. *Hayden*, 5 Oreg. 22 ; *Milton* v. *De Yampert*, 3 Ala. 648 ; *Jennings* v. *Thomas*, 13 Sm. & M. (Miss.) 617, showing the *prima facie* liability to be that of an indorser ; but the following showing it to be *prima facie* the liability of maker or guarantor: *Killian* v. *Ashley*, 24 Ark. 511 ; *Good* v. *Martin*, 2 Col. 218 ; *Clark* v. *Merriam*, 25 Conn. 576 ; *Gilpin* v. *Marley*, 4 Houst. 284 ; *Parkhurst* v. *Vail*, 73 Ill. 343 ; *Fuller* v. *Scott*, 8 Kan. 25 ; *McGuire* v. *Bosworth*, 1 La. An. 248 ; *Woodman* v. *Boothby*, 66 Me. 389 ; *Ives* v. *Bosley*, 35 Md. 262 ; *Way* v. *Butterworth*, 108 Mass. 509 ; *Rothschild* v. *Grix*, 31 Mich. 150 ; *Stein* v. *Passmore*, 25 Minn. 256 ; *Western, etc., Association* v. *Wolff*, 45 Mo. 104 ; *Baker* v. *Robinson*, 63 N. C. 191 ; *Seymour* v. *Mickey*, 15 Ohio St. 515 ; *Perkins* v. *Barstow*, 6 R. I. 505 ; *Carpenter* v. *Oaks*, 10 Rich. 17 ; *Harrison* v. *Sheirburn*, 36

Tex. 73 ; *Orrick* v. *Colston*, 7 Grat. 189 ; *Burton* v. *Hansford*, 10 W.Va. 470 ; *Sylvester* v. *Downer*, 20 Vt. 355 ; *Gorman* v. *Ketchum*, 33 Wis. 427 ; *McGee* v. *Connor*, 1 Utah, 92 ; *Rey* v. *Simpson*, 22 How. 341 ; *Good* v. *Martin*, 95 U. S. 90 ; *Matthews* v. *Bloxsome*, (Q. B.) 10 L. T. Rep., N. S. 415.

It is well settled, in this State, that the *prima facie* liability is that of indorsement. *Wells* v. *Jackson*, 6 Blackf. 40 ; *Early* v. *Foster*, 7 Blackf. 35 ; *Harris* v. *Pierce*, 6 Ind. 162 ; *Cecil* v. *Mix*, 6 Ind. 478 ; *Vore* v. *Hurst*, 13 Ind. 551 ; *Sill* v. *Leslie*, 16 Ind. 236 ; *Snyder* v. *Oatman*, 16 Ind. 265 ; *Drake* v. *Markle*, 21 Ind. 433 ; *Dale* v. *Moffitt*, 22 Ind. 113 ; *Houston* v. *Bruner*, 39 Ind. 376 ; *Roberts* v. *Masters*, 40 Ind. 461 ; *Bronson* v. *Alexander*, 48 Ind. 244 ; *Schulz* v. *Klenk*, 49 Ind. 212 ; *Nurre* v. *Chittenden*, 56 Ind. 462 ; *Browning* v. *Merritt*, 61 Ind. 425.

The doctrine, as deduced from a consideration of the Massachusetts, New York and English cases, was stated in *Wells* v. *Jackson, supra*, in the following language : "That the blank indorsement of unnegotiable paper, made at the date of the contract, and unexplained by extrinsic testimony, confers upon the payee the authority to hold the indorser liable on the original contract, as a surety ; and that a similar unexplained indorsement of negotiable paper renders the indorser liable only as indorser, with the original rights and privileges incident to that character. But that, in either case, the liability designed to be assumed, and the authority intended to be given by the indorsement, may be explained by the attendant circumstances, and the *prima facie* responsibility be changed into one of another kind. And this appears to us to be also the common-sense view of the subject."

This statement of the doctrine has been sometimes quoted and repeatedly recognized, and never condemned or criticised, in the later cases ; but whether it has been uniformly understood and applied in the sense in which it was understood and applied in the case where it is found, is not clear.

As stated, the rule is made ambiguous, or at least capable of two constructions, by reason of a change of the form of the expression in the two clauses of the first sentence. In the first clause it reads, "confers on the payee the authority to hold the indorser liable on the original contract, as a surety ;" but, instead of continuing the same form of expression in the second clause, and saying, "authorizes the payee to hold," etc., it says, "renders the indorser liable only as indorser."

Just here seems to be the pivotal point of the discussion. The position taken by the counsel for the appellee is, and the cases which support it assume, that such an indorser can not be liable as an indorser to the payee of the paper. This, of course, implies the further assumption of the corollary proposition, that such an indorser, if liable to the payee at all, must be liable as a joint maker, surety, or guarantor— any thing but indorser. This much assumed, the conclusion is easy and logical, that a finding which shows that the indorsement was made in order to give the maker credit with the payee, is equivalent to a finding that the indorser intended to become liable to the payee ; and, as his liability can not be that of indorsement, it is either suretyship or guaranty. In this case we are asked to call it suretyship rather than guaranty, because it was held, in *Drake* v. *Markle, supra*, that the statute of frauds forbids parol proof in such a case of an intended guaranty. But the effect of this ruling, if upheld, as we conceive, must be, not that the indorser who may have intended to assume the liability of a guarantor, will be held as a surety instead, but rather that, the actual intention being nullified by force of the statute, the parties will be remitted to the presumptive *prima facie* obligation of indorsement.

We might stop here, therefore, and, upon his own theory, hold the appellee not entitled to a judgment in his favor upon the finding made, because it does not appear whether the indorsers intended to accommodate the maker and give

him credit with the payee as sureties, or as guarantors. If as guarantors, aside from the statute of frauds, they are not liable except upon proof of a demand on the .maker, and notice of non-payment within a reasonable time after the ·default, or proof that no harm had or reasonably could have accrued to them on account of the failure to make the demand and give them notice thereof. *Gaff* v. *Sims*, 45 Ind. 262; *Cole* v. *The Merchants Bank*, etc., 60 Ind. 350; 2 Daniel Negotiable Instruments, 662, sec. 1,787.

We prefer, however, not to rest our decision here. We think the assumption that an indorser may not be liable as such to the payee of a note, however seemingly well supported by the authority of decided cases, is not in accordance with sound reason, with "the common-sense view of the subject," nor with the drift or status of the decisions of this court, especially of the later cases. What is there in the terms or in the nature of the obligation of the contract ·of indorsement, which forbids its operation· in favor of the payee of a note as well as in favor of an indorsee in the strict sense? A regular "indorsement, when made for an adequate consideration, passes the interest of the indorser, and amounts to an undertaking, unless qualified in express terms, that if the bill or note is not paid at maturity, and the indorser has due notice of dishonor, he will pay it, which in law is a contract in favor of the indorsee, and every holder to whom the note or bill is transferred." Chitty Bills, 241; Story Notes, sec. 135; Edwards Bills, 272–284; *Chaddock* v. *Vanness, supra*. The indorsement of one who signs before indorsement by or delivery to the payee, of course, makes no transfer of interest or title in the note, but there is no reason why it may not evidence an undertaking by the indorser to the payee or holder, that if the note is not paid ·by the maker, and the indorser has due notice of the dishonor, he will pay it to the payee as well as to his indorsee. There can be no doubt that, if written out in full over

the indorsed name, such a contract would be in all respects valid and effective, and the liability would be exactly the same as that of an indorser; and, it being established that parol evidence is admissible to show what contract the parties intended, it should be admissible to show this, as well as a contract of suretyship or of guaranty. The primary presumption, let it be granted, is a strict indorsement, which will not operate in favor of the payee, but of his indorsee only, such indorser being liable only as second indorser, and entitled to recourse against both the maker and the payee who becomes the first indorser; but if the evidence show that the indorsement was made before delivery to the payee and for the maker's accommodation, or to give him credit with the payee, then the indorser is liable directly to the payee, *prima facie*, as indorser, or if the proof be such as to show it, then as surety.

That such indorser may be liable to the payee as indorser counsel concede to be the ruling in Alabama and Mississippi. *Milton* v. *De Yampert*, 3 Ala. 648, and *Jennings* v. *Thomas*, 13 Sm. & M. 617. To the same effect as we understand them, are the decisions in California, where such an indorser is called a guarantor, but his liability, which is enforced in favor of the payee, is held to be the same as that of indorser. *Clarke* v. *Smith*, 2 Cal. 605; *Ford* v. *Hendricks*, 34 Cal. 673; *Jones* v. *Goodwin*, 39 Cal. 493. Besides the quotation already given, the following language is used in *Wells* v. *Jackson, supra,* to wit: "The defendant is the last of three indorsers, and must be presumed, agreeably to the principles laid down, to have placed his name upon the bond in the character of an ordinary indorser, looking to the responsibility of those whose names precede his, including the payee and maker. As the count under consideration attempts to to hold the defendant primarily liable, it is defective." This decides, that the *prima facie* obligation in such case is as second indorser, but it is not a decision even by implication

that there may not be a liability as indorser in favor of the payee. In *Early* v. *Foster*, 7 Blackf. 35, in an opinion prepared by the same judge who wrote the opinion in *Wells* v. *Jackson*, after saying that the "unexplained indorsement of the note, made at its date, did not render" the indorser primarily liable, as a joint maker, to the payee, the court adds : "And he is not shown to be responsible as an indorser, so as to render him jointly liable with the maker, under the statute ;" strongly intimating, if not absolutely implying, an understanding on the part of the court, that he was liable to the payee as indorser, though not shown to be liable jointly with the maker under the statute. The same understanding is manifest in most of the decisions made by this court since that time, while the cases of *Bronson* v. *Alexander*, 48 Ind. 244, and *Nurre* v. *Chittenden*, 56 Ind. 462, are totally irreconcilable with the position that such an indorsement, made before delivery and for the accommodation of the principal obligor, is an original undertaking or contract of suretyship, but on the contrary they are in entire harmony with, and indeed can be upheld only upon, the doctrine that the indorser may be liable as such to the payee, and if liability to the payee be shown to have been intended, it will be presumed to be as indorser, unless the evidence shows affirmatively that a different contract was intended.

In accord with these views, we subjoin the following quotations from Mr. Daniel's work on Negotiable Instruments, already cited. He says : "Sec. 710. * * Whatever diversities of interpretation may be found in the authorities on the subject, they very generally concur, though not with entire unanimity, that, as between the immediate parties, the interpretation ought to be, in every case, such as will carry their intention into effect, and that their intention may be made out by parol proof of the facts and circumstances which took place at the time of the transaction. If the person who places his name on the back of the note before the payee in-

tended at the time to be bound to the payee only as a guarantor of the maker, he shall not be deemed to be a joint promisor, or an absolute promisor to the payee. If he intended to bind himself as a surety or joint maker of the note, he will not be permitted to claim afterward that he was only a guarantor. And if he intended to be bound only as an indorser, the better opinion is that this also may be shown as between him and the payee.

"Sec. 714.. It would seem to us that such a party ought to be regarded as a first indorser. If he intended to be a second indorser, he should have refrained from putting his name on the note until it was first indorsed by the payee. By placing it first he enables the payee to place his own afterward; and *prima facie* the facts would seem to indicate such intention. There is nothing in the objection that there is no title in him to indorse away. Prior parties could not be sued without the payee's indorsement; but he being an indorser can be sued by any one deriving title under him. In fact, his position seems to render his liability strictly analogous to that of the drawer of a bill upon the maker in favor of the payee; and so to regard him simplifies, as it seems to us, a question which, unless such analogy be followed, is exceedingly complicated and difficult. * *

"Sec. 715. What parol evidence determines the liability of the person signing before the payee is also a matter upon which opinion is diverse. Many authorities take the ground that when it appears that the note was intended for the payee, or that the name was placed upon the back of the note before its delivery to the payee, that circumstance fixes the liability contracted as that of joint maker, and excludes further inquiry. But this does not seem to us sufficient," etc.

"Sec. 716. When the note is sued upon by the payee, it is held that the idea of the party before him being bound as an indorser is excluded. But this doctrine does not seem to us correct. The indorsement, it is true, is an irregular one;

but it is quite similar to a bill drawn by the indorser on the maker, and to follow that analogy in all regards seems to us the simplest and most reasonable solution of the question. 'And there are a number of cases which regard such a party's liability as *prima facie* that of an indorser." The cases cited under the last proposition are : *Price* v. *Lavender*, 38 Ala. 389 ; *Comparree* v. *Brockway*, 11 Humph. 355 ; *Clouston* v. *Barbiere*, 4 Sneed, 335 ; *Jennings* v. *Thomas*, 13 Sm. & M. 617 ; *Kamm* v. *Holland*, 2 Oreg. 59 ; and the following of this court already cited *supra: Wells* v. *Jackson; Vore* v. *Hurst; Sill* v. *Leslie; Dale* v. *Moffitt; Roberts* v. *Masters.*

The petition is overruled, with costs.

ELLIOTT, J., absent.