MILTON v. DeYAMPERT.

1. A blank endorsement imports a consideration, and can be given in evidence on the common counts.
2. When one places his name in blank upon the back of a note, negotiable and payable in Bank, although the note is not endorsed by the payee, the endorser thereby becomes bound to a similar extent as he would be by a perfect endorsement to another party to the note; and he may be charged by the payee, upon showing a demand upon the maker, and notice to the endorser, on the last day of grace.

Writ of error to the Circuit Court of Mobile county.

ASSUMPSIT. The declaration contained three special counts—the first and third, on a guaranty, and the second, on a promissory note. Also, a general count, for goods, wares, &c.—money lent and advanced, paid, had and received, and on an *insimul competassent*.

The case was submitted to a jury as on issue joined, and a verdict was returned, on which judgment was given for the plaintiff.

At the trial, the plaintiff produced and read in evidence, two promissory notes, each for the sum of fifteen hundred dollars, dated the 17th March, 1837, signed by Thomas Jenkins, payable to the plaintiff or order, and negotiable and payable at the Branch Bank of the State of Alabama at Mobile; one payable on the 1st day of June, and the other on the 1st day of July, 1837. Both notes had the names of the defendant and one G. W. Grant, written on the back and across the notes.

The plaintiff then proved the protest of the said notes for non payment, and notice thereof to the defendants. He also called a witness who testified that the defendant told him that he had indorsed the said notes as security for Jenkins, and had been indemnified by him.

There was no proof that Milton, the defendant, had ever entered into any agreement with the plaintiff, in relation to these notes; or that there had been any interview between him and the plaintiff, in relation to the notes, or to the indorsements made thereon.

On this state of facts, the Court charged the jury that this evidence, if true, was sufficient to sustain the action.

To this charge the defendant excepted, and now assigns it as error.

Lessesne, for the plaintiff in error, cited Chitty on Bills, 14, 15; Nash v. Tilloe, 2 Henry Black. 319; Bullen v. Webb, 4 B. & C. 483; S. C. Eng. Com. L. Rep. 154.

Stewart, contra, cited Dean v. Hall, 17 Wend. 214; 5 Wheat. 277; 19 Pick. 260.

GOLDTHWAITE, J.—We have not considered it important to examine the special counts of the declaration in this case, to see whether the evidence was properly applicable to them, because, in our opinion, it was clearly admissible under the general count. The only objection urged against its application under this count, is, that no sufficient consideration is shown, moving from the plaintiff to the defendant. But with us, all written instruments for the payment of a debt, or for the performance of a duty, import a consideration, whether under seal or otherwise, and by statute, are declared to be evidence of the debt or duty for which they are given. Aikin's Digest, 283. Chamberlain v. Darrington, 4 Porter, 515.

2. This disposes of the case, unless we are to understand the plaintiff in error, as asserting that the evidence itself does not disclose any sufficient cause of action, to authorise the plaintiff to recover under any form of pleading.

We consider, however, that a perfect contract is evidenced by the note of Jenkins, with the name of the defendant written on and across its back, and the only matter to be ascertained, is the legal effect of this contract.

In the case of Jordan, for the use of Stillwell, v. Garnet, *supra*, in which a question, similar in many of its aspects, was presented, we held that one who placed his name on an assignable, as distinguished from a negotiable security, was not to be presumed to have taken on himself a greater liability, by such a blank signature as is here shown, than he would have incurred by a regular indorsement. The same rule must be applied to this case, but the legal result is somewhat different, and this arises from the fact, that in this case, the note is negotia-

41

ble and payable in bank; whilst in the other, it was assignable merely, but not negotiable.

This difference in the result of the application of the same rule, renders it necessary to explain the reasons for the distinction, and in order to do so with perspicuity, it is necessary to repeat some of the deductions which were then made, from the intrinsic evidence afforded by the paper indorsed.

The name of the defendant appears in immediate connexion with the written promise of another, which in this case is in the form of a promissory note, negotiable and payable at a bank, upon which an indorser, in the technical sense of that word, would become bound immediately and absolutely, upon the maker's default, provided it was regularly presented for payment, and due notice given to the indorser, of the neglect or refusal.

Finding his name in this connexion, we must conclude it was placed there for the purpose of evidencing a contract of some description; for we are not aware of any case where it has been decided that such a blank signature is entirely inoperative. What then is the precise character and extent of the engagement entered into by such a blank signature on the back of a contract, for the payment of money? It is entirely useless to transcribe, or even cite the great number of cases decided in other Courts upon this subject, because they are sufficiently numerous and variant, to give almost any response. Dean v. Hall, 17 Wend. 214, where many of these cases are collected.

In such a condition of adjudication, we are thrown upon principles, and it is evident that we must get our answer from the paper itself.

This, we think, shows conclusively that the defendant never signed it as maker, for the note was before him, and he did not put his name on its face. Hence we conclude, he did not intend to become bound as a co-maker. He places his name on the back of the note, but it was not necessary in that place to give any efficiency to the paper, and did not operate to assign it; his name then must either be discarded entirely, or held to evidence some contract collateral to the note; and in some manner connected with and dependent on it.

We say in some manner *connected with and dependent on the note,* because it is evident that a *perfect indorsement* does

not mean the same thing, or carry with it the same liabilities when found upon a note or bill negotiable and payable in bank, as it does when found upon a note which is not negotiable, but which is merely assignable under the statute. Therefore, when it is shown that perfect indorsements import different liabilities, according to the nature of the securities upon which they are found, it follows, necessarily, that the liabilities of imperfect indorsements must be referred to, and deduced from the securities on which they are found.

Indeed, when all of these engagements are construed to be collateral to the contract on which they are indorsed, and that the indorser thereby contracts that the maker of the security indorsed, will make the payment he has contracted to pay, we are furnished with a certain and never varying rule, which requires no modification, except that which is necessary to ascertain the condition upon which, and the period of time when, the collateral contract is to become absolute.

Whenever the security upon which the imperfect indorsement is written, may be the subject, either of assignment or indorsement, the imperfect indorsement must, in conformity with the rules we have thus ascertained, be governed by similar rules to those which are applicable to perfect indorsements, and a similar degree of diligence is necessary to charge one who becomes bound by an imperfect indorsement, as is necessary to charge an actual indorser.

We have shewn in the case of Jordan v. Garrett, that such a contract cannot be supposed to create a greater liability than a perfect indorsement, and to construe such engagements in any other manner, would leave the ignorant and unwary at the mercy of the designing; but with this construction, they will conform in most, if not in all cases, to the obvious intentions of the parties making and accepting them.

The cases must be exceedingly rare, if they exist at all, in which any one writes his name upon the back of any security, by which money or any other thing is promised to be paid, who does not distinctly understand that he thereby becomes bound as an indorser.

We have not been able to perceive that any other general rule can be deduced from elementary principles, capable of covering all cases in which imperfect indorsements may be made.

Milton v. DeYampert.

To hold them to be mere guarantys in the strict sense of the term, when found upon mercantile or assignable securities, would introduce the same evils which were intended to be obviated by our statutes, which define the liability of indorsers, and which create the distinction between mercantile and assignable securities. Although these statutes do not, in terms, apply to such cases as this, they evidently contemplate that only two classes of notes shall exist; one of which is strictly mercantile, as notes payable in bank, and bills of exchange; and the other not negotiable, but assignable merely. In both of these classes, the liability of an indorser is very clearly ascertained, and it seems to us that it would be highly prejudicial to the community, to introduce a class of indorsements, which would in each case be governed by rules dissimilar to those which obtain in either class, which the statutes contemplate. Our conclusion is, that the contract of the defendant in this case, though not an indorsement in the technical sense of that word, is to be governed by similar rules, and his liability was complete as soon as the maker made default, and notice was given of the refusal or neglect to pay.

We remark, that we do not wish to be considered as concluding the question, whether, under such an indorsement as this, the indorser might not be made liable, even if he was not notified according to the law merchant, if due diligence was otherwise shown; or if it was shown that no injury resulted to the defendaut from the omission to give notice.

Let the judgment be affirmed.