## HULLUM vs. THE STATE BANK.

1. An endorsement of a bill or note after it has been protested for non-payment is to be construed according to the intention of the party making it, and if it be clear that he intended by the act to bind himself as a regular endorser, whose liability is fixed, he may be sued and a recovery had against him as such.

CHILTON, J., dissenting, and holding that to entitle the plaintiff to recover, the action should be predicated upon the agreement, by which the party bound himself to respond as an endorser; otherwise there would be an incongruity between the averments and proof.

ERROR to the County Court of Tuskaloosa.

THIS was a motion by the Bank against the defendant as endorser of a bill of exchange, drawn and accepted by R. Carothers and endorsed by Charles S. Patterson and Dennis Dent. The evidence shows that on the 5th day of July 1841, after the maturity of the bill, which had been duly protested for non-payment, the defendant went into the Bank and asked for the bill, which was handed him with the protest, and the defendant then wrote his name across the back of said bill. This was done at the instance of Dennis Dent, one of the endorsers, but without any request of the Bank, and no consideration passed from the Bank to the defendant for the endorsement. The Bank introduced in evidence a deed of trust, dated the 28th June, 1841,

which was signed by Robert Carothers, Leonard B. Neal, Charles S. Patterson, Dennis Dent, and the defendant, purporting to be a deed executed by said Carothers, of the first part, Leonard B. Neal, of the second, and Patterson, Dent, and the defendant, of the third part. This deed recites that said Carothers was indebted to the Bank in the sum of six thousand two hundred and forty-eight dollars, due by two bills of exchange, upon which the Bank had agreed to indulge the said Carothers and his securities, the parties of the third part, on his paying semi-annually ten per cent. on the amount of said bills, the Bank having the right to collect the whole, however, at pleasure. By this deed there was conveyed to said Neal five slaves, together with some articles of house-hold furniture and other personal property, for the purpose of securing this debt. The deed, however, contained a provision that said Carothers should retain the possession of the property until the securities, the parties of the third part, should be called on to pay said bills, or either of them, or any part thereof, and that said Neal was then authorised to sell the property and apply the proceeds to the payment of the debt. Neal, the trustee, testified that he had sold the property; except two of the slaves, one of which had died, and the other of which had been claimed by Mrs. Carothers; that the property was sold on a credit at the instance of Patterson, Dent, and the defendant, as he understood; and that the notes received by him had been deposited in the Bank as collateral security, at the written request of Dent and the defendant. Wm. Braly stated that he was called on to value the property before it was sold; that he understood the valuation was made at the instance of all the parties, but could not remember distinctly by whom he was requested to make the valuation; that he had conversed with the defendant, who said that he was fearful he would have to pay money to the Bank as the security of Carothers, without, however, particularising any debt, and that the securities, Patterson, Dent and himself, had a deed of trust on the property of Carothers. Mrs. Carothers, the widow of Robert Carothers, was introduced by the Bank as a witness, and stated that the defendant told her in a conversation about these debts, that he had sent a thousand dollar note on Kinkle & Carothers, which he had received from her husband to indemnify him as security, to her brother in Mississippi, and

that her brother had written him that he had been offered five hundred dollars for it, but she then stated that she could not say that the defendant said he had received it as security. On this evidence the Bank offered to read the bill of exchange and the endorsement. This was objected to, but the objection was overruled, and the defendant excepted. The defendant also objected to the reading of the protest, and the certificate of Lyon, the Bank commissioner, showing that the debt was the property of the Bank. His objections being overruled, he then demurred to the evidence, and the court gave judgment against him for the amount due on the bill, to reverse which judgment, a writ of error is prosecuted to this court.

PECK, for the plaintiff in error.

MARTIN, for the defendant.

DARGAN, C. J.—It is said that a blank endorsement of a bill or note, made in the regular course of trade, is a contract defined and ascertained by law, and parol proof cannot be received to show a contract different from that which the law attaches to the act of endorsement.—Wilson v. Black, 6 Blackf. 509; Tankersly v. Graham, 8 Ala. 247. But we think it is settled beyond controversy, that if one write his name on the back of a bill or note, under such circumstances, that it cannot be considered as an endorsement in the usual course of trade, parol proof may be received to show the nature of the contract and the extent of the liability assumed by the party. Thus, if a note be made by A., payable to B., or order, and the name of C. be endorsed on the back of it, the contract is open to explanation, and its real terms may be shown by parol proof. Strong v. Riker, 16 Verm. 554; Crozier v. Chambers, 1 Spencer, 256; Kimbrough v. Lamb, 3 Humph. 17; 3 Scam. 497; 13 Ohio, 228. In the absence of all proof, as to the terms of the contract evinced by the signature, the law would regulate or ascertain the contract, if it appeared to have been founded on a sufficient consideration.—Milton v. Deyampert, 3 Ala. 648, and cases there cited. But we do not understand this authority as denying the admissibility of parol proof to explain the real nature of the contract, or the liability of the party making such an

endorsement. We must then look to the evidence to ascertain, if we can, the intention of the defendant in writing his name on the back of the bill, for it is this intention that governs and ascertains his contract. The Bank was the holder of the bill at the time the defendant endorsed it; the bill was then over due and had been protested for non-payment; no consideration passed from the Bank to the defendant, nor did he endorse the bill at the request of the Bank, but at the instance of Dennis Dent, whose liability as an endorser was then absolute. We also infer from the testimony, that in consideration of this endorsement made by the defendant, Robert Carothers executed the deed of trust, to which the defendant became a party, and that he also received by way of indemnity the note of $1000 on Kinkle & Carothers. The deed on its face shows that it was not expected that the Bank would demand immediate payment of the bill from Carothers, but it was presumed that Carothers would be indulged upon paying ten per cent. on the amount of the debt *semi-annually*. On this consideration and in view of these facts, he endorsed the bill. How did he consider that he stood in reference to it? I think there can be no doubt but that he considered himself liable on the bill, in the same manner and to the same extent, that he knew Dent and Patterson, the other endorsers, were,—and he did not expect an immediate demand of payment to be made of Carothers, nor notice to him of a failure to pay; but the true intention of his contract was that he should be absolutely liable, as were the other endorsers, without demand of payment from the acceptor. We attain this conclusion of fact from the deed of trust, which was signed by the defendant and the other endorsers, and which treats them as all liable absolutely and unconditionally for the debt; also, from the conduct of the defendant in reference to the sale of the property and the transfer of the notes to the Bank, which evinces, in our opinion, that he then considered himself absolutely liable in the same manner that the other endorsers were. He then signed his name on the back of the bill, intending to create an absolute and unconditional liability for its payment. But it is urged that the contract, as explained by the evidence, can amount only to a guaranty for the payment of the bill, and not to an endorsement, and therefore the plaintiff cannot recover—first, because the Bank cannot proceed in this summary way against

a guarantor—and secondly, because the defendant, being treated as endorser in the notice, proof that he was guarantor of the bill would not entitle the Bank to a recovery.

I admit that there is great diversity to be found in the authorities, respecting the nature and character of these irregular endorsements. But after the best consideration I am able to give the question, I think the correct rule is this, that the nature of the contract and the extent of the liability of the party are to be ascertained from his intention, as shown by the evidence, in making the endorsement. If the party endorsing the note intended to create a liability as guarantor only, he must be so treated and so sued, to enable the plaintiff to recover; if he intended to create a liability as endorser, he must be so treated. This is the conclusion to which Judge Story came, after a review of most of the conflicting American authorities.—See Story on Prom. Notes, § 479. Governed by this rule, which is the principle that governs in the interpretation of all contracts, I feel constrained to hold from the evidence that the defendant intended to stand in reference to the bill as an endorser, whose liability was fixed. This is the nature and extent of his contract in putting his name on the back of the bill, and I see no reason why he should not be treated as such. The judgment must therefore be affirmed.

CHILTON, J.—I dissent from the opinion of the majority of the court. The motion, which is in the nature of a declaration, avers that Hullum endorsed the note to the Bank, thus vesting it with the legal title; that the note was duly protested for non-payment and notice of protest given to Hullum as endorser, whereby he became liable, &c. It turns out in proof that the Bank never acquired the title from him; that he endorsed his name upon the paper after the Bank acquired it, and after it had been protested, and that it has never been protested since Hullum signed his name upon it. Here then is an utter incongruity between the facts alleged and the facts proved, and if the plaintiff recovers, it must be without proof of a *single* averment in the declaration. But, to cure this variance, it is insisted that Hullum agreed with the other parties to the bill, he would be liable as an endorser. It is a sufficient answer to this, that no such agreement is avered, and consequently it could not

53

be made the foundation of a recovery.  It does seem to me, that to sustain the recovery against Hallum upon the averments in this case, is to strike down the rule which requires a correspondence between the allegations and the proof.