# CASES

IN THE

# SUPREME COURT OF ALABAMA,

## NOVEMBER TERM, 1896.

## Alabama National Bank *v.* Rivers.

*Action by Bank against Indorser of Bill of Exchange.*

1. *Irregular accommodation indorsement.*—Where one who is a stranger to a draft or bill of exchange, goes to a bank with the payee thereof, for the purpose of identifying him, and upon the payee asking to have the draft or bill of exchange cashed, after having indorsed it, if such person, at the instance of the cashier of the bank, indorses the paper, such indorsement is not a regular indorsement for the purpose of transfer, but is purely an irregular accommodation indorsement.

2. *Same; liability of such indorser.*—The liability of an irregular accommodation indorser, in favor of the person against whom the indorsement is made, is the same as that of a regular indorser; and since the liability of such an indorser is contingent on due presentment, non-payment and notice of dishonor, if the draft or bill of exchange so indorsed was, in fact and in legal contemplation, paid by the drawee, such fact of payment will constitute a complete defense to an action seeking to hold such indorser liable.

3. *Action against indorser of draft or bill of exchange; sufficiency of pleas.*—In an action against an indorser of a draft or bill of exchange, where the defendant, by special plea, sets up as a defense that the draft or bill of exchange had been paid by the drawee, demurrers to such plea upon the ground that if payment was made it was by mistake, and under such circumstances that the refunding of the money paid could legally be compelled, and that such amount was in fact refunded, are properly overruled; such fact constituting proper matter for replication and not a ground of demurrer to such plea.

4. *Same; same; parol evidence inadmissible to vary indorsement.* The legal effect of an indorsement of a draft or bill of exchange can not be varied by parol evidence of an agreement contemporaneously made, that the indorser should not be made personally liable for its

1

[Alabama National Bank v. Rivers.]

payment; as for instance, that he only made the indorsement to identify the payee at the bank at which the draft or bill of exchange was negotiated; and a plea setting up as a defense such facts, and which shows that they rested in parol only, presents an insufficient defense and is demurrable.

5. *Same; sufficiency of evidence; general affirmative charge.*—In an action against the indorser of a draft or bill of exchange, where it is shown that the defendant indorsed the paper for the accommodation of the payee named therein, by whom it was negotiated to the plaintiff, who mailed it for collection, and several days afterwards notified the defendant of the fact that the draft or bill of exchange had been fraudulently altered, but it is not shown that there had been a demand, protest and notice of dishonor, and there is evidence tending to show a promise on the part of the defendant to pay said draft or bill of exchange, after being notified of the forgery, the general affirmative charge, predicated on the want of evidence of demand, protest or notice of dishonor, should not be given for the defendant; but the question of laches in respect to the presentment for payment, protest and notice of dishonor, should be submitted to the jury, with instructions that if the defendant made such promise of payment, with knowledge that a demand, protest and notice of dishonor had been omitted, such promise was a waiver of these prerequisites.

6. *Liability of accommodation indorser; sufficiency of consideration.* In order to fasten liability upon one who indorses a draft or bill of exchange for the accommodation of the payee therein, it is not necessary that any consideration should move directly to such indorser; but the contract of such indorsement is supported by the consideration which moves to the payee from the person to whom he negotiates the draft or bill of exchange.

7. *Forged draft or bill of exchange; liability of indorser; right of drawee bank on discovering forgery.*—Where a forged draft or bill of exchange has been negotiated to a bank, a stranger to the paper becoming an irregular accommodation indorser thereon, and such draft or bill of exchange is sent by the bank to which it is negotiated to another bank as its agent for collection, and upon its presentation the drawee bank pays the draft to the bank holding it for collection, upon discovery of forgery, such payment is treated in law as made under a mistake of fact, and if the bank to whom the payment was made had not, in fact, paid the money over to the forwarding bank, but had merely credited its account with the amount, such bank, as agent for collecting, would have the right to refund the money to the drawee bank, charge back to the forwarding bank the amount credited and return the draft to it, and such a transaction would not constitute payment of the forged draft, and would present no defense to a suit by the indorsee bank against the accommodation indorser.

8. *Action against the indorser of bill of exchange; sufficiency of evidence; general affirmative charge.*—In an action against one who indorses a draft or bill of exchange for the accommodation of the

[Alabama National Bank v. Rivers.]

payee named therein, and the defendant pleads payment of the draft by the drawee, where it is shown that, without any complicity on defendant's part, the payee in said draft or bill of exchange fraudulently altered it and raised the amount thereof, prior to his negotiation of it to the plaintiff, that the plaintiff sent the draft to another bank as its agent for collection, who, after having first entered on its books the amount named therein to plaintiff's credit, afterwards returned the draft to plaintiff, but it does not appear specifically whether the payment on such draft had been refused by the drawee on presentment, or whether the draft had been paid and the money refunded by the plaintiff's agent to the drawee on the discovery of the forgery, but the evidence introduced warrants the inference that upon the discovery of the forgery, plaintiff's agent refunded the money to the drawee, received the draft in return, charged back to plaintiff the amount credited, and returned the draft to plaintiff, the question of payment *vel non* which was an issue in the pleadings, should be submitted to the jury; and the giving of the general affirmative charge in favor of the defendant is erroneous.

9. *Same; indorser can not be held liable in an action for money had and received.*—Where one who is a stranger to a draft or bill of exchange goes to a bank with the payee named therein for the purpose of identifying him, and upon the payee asking to have the draft or bill of exchange cashed after having indorsed it, such person, at the instance of the cashier of the bank, indorses the paper, upon its being ascertained that such draft or bill of exchange had been altered and the amount raised by the payee, with which fraud the accommodation indorser had no complicity, the liability arising from such indorsement, if any, is strictly that of an indorser, and an action for money had and received can not be maintained against such indorser; and the fact that after receiving the money the payee in the draft or bill of exchange paid to such indorser a part of the money in satisfaction of a debt which he owed him, and which the indorser at once discharged and surrendered the securities held by him, does not render the indorser liable to the bank in an action for money had and received, or for money paid, to the extent of the amount of the money received by him from the payee.

10. *Interrogatories; objections to questions and answers.*—When the deposition of a witness is taken on interrogatories and cross interrogatories, and no objection is filed to interrogatories which called for irrelevant matter, an objection not made until the deposition was read to the jury on the trial comes too late, and is properly overruled.

11. *Action against an accommodation indorser; evidence as to who asked the defendant to become the indorser admissible.*—In an action by an indorsee against an indorser, where it is shown that the defendant was an irregular accommodation indorser of the draft purchased by plaintiff from the person named therein as payee, and the said draft before its purchase by the plaintiff had been altered and changed and the amount therein raised, it is competent to show by whom the defendant was asked to indorse the draft.

[Alabama National Bank v. Rivers.]

12. *Same; evidence by the defendant that he did not promise to pay the draft admissible.*—In an action by the indorsee against an indorser, where the defendant sets up as a defense that there has been no demand, protest and notice of dishonor, and one of the witnesses for the plaintiff testified that the defendant had written to the plaintiff promising to pay the draft, but the letter was not produced in evidence, it is competent for the defendant, as a witness in his own behalf, to deny that he had so written to the plaintiff.

13. *Same; admissibility of evidence to show that the debt paid to indorser by payee was secured.*—In an action by an indorsee against an accommodation indorser, where it is shown that after receiving the money upon said draft, which was indorsed by the defendant, the payee paid a part of such money to the defendant in payment of an indebtedness to him, evidence that such indebtedness from the payee to the defendant was evidenced by promissory notes secured by the indorsement of third persons, is admissible as tending to strengthen the testimony already introduced under issues properly formed, that defendant gave value for the money paid him.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

This was an action of assumpsit, brought by the appellant against the appellee. The cause of action and the substance of the six counts of the complaint are sufficiently stated in the opinion.

The defendant pleaded the general issue and the following special pleas : 1st. That before the commencement of the suit the amount of the check or bill of exchange sued on was paid to plaintiff by the National Park Bank of New York (drawee). 2d. That before the commencement of this suit the drawee of the bill of exchange paid the amount thereof to the National City Bank of New York, to which bank plaintiff had indorsed the same. 3d. That after defendant had signed his name on the back of the bill of exchange, plaintiff indorsed the same to the National City Bank of New York, and that upon presentation by said holder, the National City Bank, to the drawee, the National Park Bank, the same was paid by said drawee. 4th. That upon presentation to the drawee, the National Park Bank, the check was paid by said drawee, by giving credit to plaintiff, upon an account existing between plaintiff and the drawee, both being banks, which mode of payment was according to the custom of banks. 5th. That after the bill of exchange had been indorsed to plaintiff, plaintiff indorsed the same to the City Bank of New

York, which bank paid plaintiff the full sum of said check or bill of exchange. 6th. That plaintiff had an account with the National City Bank of New York, and forwarded said check to that bank for collection and that said bank paid to plaintiff the full sum of said check by crediting the amount thereof to plaintiff in its account with said bank. 7th. That defendant wrote his name on the back of the bill of exchange at the instance and request of the plaintiff, for the special and sole purpose of attesting the signature of M. Gellhorn, the payee and indorser. The 8th, 9th, 10th, 11th, 12th, 13th and 14th pleas were demurred to, demurrers were sustained, and they are, therefore, not involved in the appeal. 15th. Is a plea of payment in full. 16th. That defendant wrote his name on the back of the draft, without any consideration passing to him, that he was not the owner or holder of the paper, that the money paid by plaintiff was not paid to him, but all of it was paid to Gellhorn, and that on presentation of the draft to the drawee, the same was duly paid and the draft cancelled. 17th. That defendant went to plaintiff's bank to identify Gellhorn, the payee, which purpose was known to plaintiff's cashier. That having done so plaintiff's cashier asked defendant to put his name on the paper, which defendant refused to do. That said cashier said to defendant that it was a custom of the bank to require this under such circumstances, so that if any question should come up about irregularity of signature the bank would know where to find the party who identified the payee; and that being thus led to believe he was putting his name on the paper for the convenience and accommodation of plaintiff, to enable it to preserve evidence of identification and that he thereby assumed no liability, that he so signed said check without any knowledge of its being other than genuine; and that he wrote his name was not at the request of Gellhorn, the payee, or for his benefit or accommodation, but was at the special request of plaintiff; that there was no consideration for his assuming any liability. 18th. Is similar to the 17th plea, except that it alleges that the cashier of plaintiff fraudulently procured his signature by fraudulently giving this assurance and inducing the belief as set forth in the 17th plea, except it alleges that the statement made by the cashier

to induce defendant to sign said paper was after said cashier had agreed to cash the check, after the terms had been agreed on and after the check had been delivered to the plaintiff.

The plaintiff demurred to the 1st, 2d, 3d, 4th, 5th and 6th pleas upon the following grounds : 1st. That they do not aver that the check was fraudulently altered as set out in the bill of complaint. 2d. They do not allege that the payment of said check was made with the knowledge of the fraudulent alteration thereof. 3d. They admit the fraudulent alteration of the check and the consequent liability of the defendant for the amount paid thereon by plaintiff, without setting out any facts showing a discharge of the defendant from such liability. 4th. They do not set up any facts which are a defense to the action.

To the 7th plea the plaintiff demurred upon the ground that it seeks to deny the written contract of the defendant.

To the 15th plea, the plaintiff demurred upon the ground that it does not aver that the payments therein mentioned were made by the defendant.

To the 16th plea, the plaintiff demurred upon the following grounds : 1st. That said plea does not allege that plaintiff never paid out money upon the note sued on, upon the defendant's indorsement. 2d. Because said plea does not set out any facts that any consideration was necessary to bind the defendant on his indorsement. 3d. Because said plea does not deny that the paper sued on was fraudulently raised from two dollars to two thousands dollars. 4th. Because it does not deny that the defendant was interested in having said check paid by the plaintiff. 5th. Because it does not aver or show that the defendant never received any of the money paid out by the plaintiff upon said paper. 6th. Because there are stated in said plea no facts showing a discharge of defendant from his liability.

To the 17th and 18th pleas, plaintiff demurred upon the following grounds : 1st. Because said pleas seek to vary the written contract entered into by defendant by indorsing his name on the check. 2d. Because said pleas do not allege any facts showing that any consideration was necessary to bind defendant on his indorsement. 3d. Because said pleas do not aver that defendant could not read, and that he signed the paper in

ignorance of its contents. 4th. Because said pleas do not aver that the defendant was not interested in having said check paid to Gellhorn. 5th. Because said pleas do not show that defendant had no beneficial interest in the cashing of said check by plaintiff. 6th. Because said pleas do not show that defendant's indorsement was not instrumental in inducing plaintiff to cash said draft. 7th. Because said pleas seek to vary the contract of the defendant entered into by him by his indorsement of draft sued on.

These demurrers were all overruled, and to the overruling of each of the demurrers the plaintiff separately excepted. The material facts of the case are sufficiently stated in the opinion.

In the 16th cross-interrogatory propounded to A. W. Hill, whose deposition was used upon the trial, he was asked the following questions : "Who was the cashier of the Gate City National Bank on the 23d of February, 1892? Who was assistant cashier?" The plaintiff objected to this cross-interrogatory, because the same called for incompetent and immaterial evidence, and moved to exclude the answer thereto for the reason that the answer was illegal, irrelevant and incompetent. The court overruled the objection and motion, and to each of these rulings the plaintiff duly excepted. The witness answered that "Edward W. McCandless was cashier and Lewis Redwine was assistant cashier."

Upon the examination of the defendant as a witness in his own behalf, and after he had testified that he indorsed the paper at the instance and request of Mr. Urquhart, who was at that time cashier of the plaintiff, and after some insistance on his part, the witness was then asked the following question : "Mr. Rivers, I will now ask you whether or not you had been asked to indorse—write your name across the back of this draft—by any one at all before Mr. Urquahart asked you?" Plaintiff objected to this question, upon the ground that it called for incompetent, irrelevent and illegal testimony. The objection was overruled and the plaintiff excepted. The witness answered : "No, sir." Plaintiff moved to exclude the answer, upon the ground that it was incompetent, irrelevant and illegal testimony, but the motion was overruled and the plaintiff excepted.

During the examination of the cashier and president

of the plaintiff as witnessess, they stated that the defendant had written a letter to the plaintiff, in which he agreed to pay the money. This letter, however, was not introduced in evidence nor was it produced at the trial. The defendant, during his examination as a witness, was asked the following question: "I will ask you to state to the jury whether or not you ever wrote a letter in which you agreed to pay this money?" Plaintiff objected because it called for immaterial, incompetent and irrelevant testimony. The objection was overruled, and plaintiff excepted. Witness answered: "I never did." Plaintiff moved to exclude the answer upon the grounds that it was incompetent, illegal and irrelevant. The motion was overruled, and the plaintiff excepted. During the further examination of the defendant as a witness, he testified that Gellhorn's indebtedness to him was evidenced by two promissory notes, and that it was these notes which Gellhorn paid with a part of the money he obtained from the defendant on the draft. The defendant then testified that these two notes were indorsed by one Whaley who was solvent. The plaintiff moved to exclude this testimony as to the notes being indorsed by Whaley, and duly excepted to the court's overruling his motion.

Upon the introduction of all the evidence, the court at the request of the defendant, gave to the jury the following written charge: "If the jury believe all the evidence in this case, they must find a verdict for the defendant." The plaintiff duly excepted to the giving of this charge.

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

LANE & WHITE and MOUNTJOY & TOMLINSON, for appellant.—1. Where one sends forward a paper for collection, and such paper is afterwards found in possession of the forwarding person, the presumption is that he is rightfully in possession, and that such paper has not been paid.—*Anniston Pipe Works v. Mary Pratt Furnace Co.*, 94 Ala. 606.

2. Where a principal sends a paper to his agent for collection, and the agent credits on his book his princi-

[Alabama National Bank v. Rivers.]

pal with such collection, this would not constitute a payment. To constitute payment the money must *actually* have been paid to the principal.—*U. S. Nat. Bank v. Nat. Park Bank of N. Y.*, 13 N. Y. Sup. 412.

3. Even where demand and notice are necessary to charge an indorser, and the same are lacking, a subsequent promise to pay is a waiver of demand and notice. *Kennon v. McRae*, 7 Porter, 175. And whatever will amount to a waiver of demand and notice will equally dispense with protest.—*Manning v. Maroney*, 87 Ala. 567.

4. When Rivers or his principal, Gellhorn, received the bank's money on the forged check, they got money wrongfully, to which they were not entitled, and the bank became entitled to sue at once and recover it back. The right to sue was co-existent with the wrong done. *Birmingham National Bank v. Bradley*, 103 Ala. 109 ; 1st Daniel on Negotiable Instruments, § 669 ; 2d Daniel on Negotiable Instruments, § 1372, and note 5 ; *Turnbull v. Bowyer*, 40 N. Y. 566.

5. When one signs as an indorser he thereby enters into a written contract which cannot be varied by parol testimony as to what was intended.—*Kulenkamp v. Groff*, 15 Am. State Rep. 283, and cases cited ; *Davis v. Randall*, 15 Am. Rep. 150 ; *Williams v. Higgins*, 69 Ala. 522. Irregular indorsements impose the same degree of liability as regular indorsements.—*Hooks v. Anderson*, 58 Ala. 240, and cases cited.

6. A consideration moving to the principal upholds not only his promise but that of the indorser also. *Marks v. First Nat. Bank*, 79 Ala. 562 ; *Davis v. Randall*, 15 Am. Rep. 150.

7. The common counts in this case contain substantial causes of action and are supported by proof. *Young v. Lehman, Durr & Co.*, 63 Ala. 519 ; *Birmingham National Bank v. Bradley*, 103 Ala. 109.

8. Expert testimony is at best weak and unsatisfactory, and cannot overcome direct and positive testimony of an unimpeached witness ; certainly not so as to take the issue from the jury.—Rodgers on Expert Testimony (2d ed.), § 202, and cases cited in note, page 460.

ARNOLD & EVANS, O. W. UNDERWOOD and J. A. MITCHELL, *contra.*—1. E. R. Rivers was neither the payee nor holder of the draft, nor interested in it, but

signed his name upon it at the request of plaintiff, He was, at most, an irregular accommodation indorser, as between him and the plaintiff, the immediate parties with notice.—*Mauldin v. Bank*, 2 Ala. 513 ; *Bank v. Dawson*, 78 Ala. 67 ; *Marks v. First Nat. Bank*, 79 Ala. 558 ; *Noble v. Walker*, 32 Ala. 458 ; *Day v. Thompson*, 65 Ala. 274.  It was competent between the immediate parties to show by parol evidence what the relation of such ''irregular indorser'' was to the draft.—Authorities *supra*.

2.  If Rivers was liable as indorser, that liability ceased, and his obligation was satisfied and the paper was cancelled, upon payment by the drawee on presentation.—3 Randolph on Commercial Paper, §§ 1420, 1421 ; 2 Daniel on Negotiable Instr., § 1236.  If payment was made by the drawee, and the obligation thus cancelled, no suit could be maintained against the indorser on the paper or his contract of indorsement, but should be either for money received by him, or for money paid, or for the damages suffered by the refunding ; but it can not be maintained on the paper.—3 Randolph Commercial Paper, §§ 1420, 1421 ; 2 Daniel Neg. Instr. § 1236 ; 2 Edwards on Bills, § 722 ; *Young v. Lehman*, 63 Ala. 522 ; *Bolling v. McKenzie*, 89 Ala. 470.

3.  If the draft was not paid by the drawee, then it was incumbent on the plaintiff to prove his allegations of presentment and due notice, and to show protest.—2 Daniel Neg. Instr., § 926 ; *Tate v. Sullivan*, 96 Am. Dec. 604, note ; *Manning v. Maroney*, 87 Ala. 566 ; 2 Greenl. on Ev., §§ 175, 176, 178, 180, 183, 186 ; *Tarver v. Boykin*, 6 Ala. 353.  And this is true where the paper is void, if the indorser has no knowledge of the infirmity ; certainly where the suit is on the contract of indorsement, and not to recover back the consideration.—*Susquehanna Bank v. Loomis*, 85 N. Y. 207 ; 2 Daniel Neg. Instr., §§ 1113a, 1113b ; 2 Randolph on Com. Paper, p. 397, § 753, note.

4.  It was also incumbent on the plaintiff seeking to recover against the indorser money paid on a forged draft, to return or offer to return it ; certainly where there was a genuine prior indorser as Gellhorn was.—*Redington v. Woods*, 45 Cal. 406 ; *Coolidge v. Brigham*, 1 Metc. 550 ; 2 Daniel on Neg. Instr., §§ 1371-1372a ; 3 Randolph Com. Paper, p. 614, § 1530.

5.  The plaintiff can not rely on any re-payment made in New York to refund to the drawee the money paid

[Alabama National Bank v. Rivers.]

by him on presentation of the draft. Because, the first four counts are on the contract of indorsement, and under the common counts "for money paid," &c., a "list of items" being demanded and furnished, limiting their claim to the payment in plaintiff's bank, at the time of the discounting by plaintiff, they are confined to the items so furnished.—Code of 1886, § 2670 ; *Boykin v. Persons*, 95 Ala. 626.

6. Where the draft sued on is stamped "paid" by the holder, and is cancelled in the way usual where such drafts are paid, it indicates payment, and this will prevail unless overcome by evidence.—*Clark v. Simmons*, 4 Porter 14 ; *Riggs v. McDonald*, 1 Ala. 641.

7. Under the common counts, the plaintiff, in order to recover against the indorser the original consideration, the burden is on the plaintiff to prove that the draft was not paid on presentation.—3 Randolph on Com. Paper, § 1673 ; Byles on Bills, 420.

8. Nothing will amount to a waiver of protest and notice, unless it is done with full knowledge of the laches.—3 Randolph on Com. Paper, § 1356 ; 2 Daniel on Neg. Instr., §§ 1147, 1149 ; *Bolling v. McKenzie*, 89 Ala. 475.

BRICKELL, C. J.—This was an action instituted by the Alabama National Bank, appellant, against E. R. Rivers, appellee, to enforce the latter's liability as an accommodation indorser of a check or draft, which had been purchased from the apparent payee upon appellee's indorsement, and which had been raised from two dollars to two thousand dollars between the date of its issue and the purchase by appellant. On February 23d, 1892, the Gate City National Bank of Atlanta, Georgia, issued its check or draft on the National Park Bank of New York for the sum of two dollars, payable to the order of Thomas Hall. Subsequently the draft was fraudulently altered by changing the name of the payee from Thomas Hall to M. Gellhorn, and changing the amount from two dollars to two thousand dollars, and punching or cutting the figures "2000" in the body of the draft. The signature was not changed in any respect. On February 25th, 1892, Rivers, who was a customer of and well known to the plaintiff, went to the bank with said Gellhorn and, leaving the latter outside, asked the cash-

ier whether he wanted any New York exchange, stating that a friend of his had some and that he would bring him in. Receiving an affirmative reply, he called in and introduced Gellhorn, who produced the draft altered as stated above. The cashier agreed to purchase the draft, and told Rivers to indorse it. The latter at first refused to indorse the draft, saying that he had not come to indorse for Gellhorn, but only to identify him, but finally did so, writing his name under and after that of Gellhorn. The latter then went to the paying teller and received two thousand dollars less one dollar charged by plaintiff for exchange. Gellhorn was indebted to Rivers at the time in the sum of seven hundred and fifteen dollars, for which he had given security, and after receiving the money from the paying teller he immediately returned to the cashier's desk and asked the cashier to count out that amount for Rivers, which was done ; the latter amount being paid to Rivers by Gellhorn in the presence of the cashier, and Rivers immediately deposited it to his credit in the plaintiff bank. The draft was sent at once by the plaintiff to its New York correspondent, the National City Bank, indorsed "for collection."

The complaint consists of six counts. The first is in the statutory form of a complaint by indorsee against indorser ; the second, third and fourth declare on the contract of indorsement, reciting the forgery and averring presentment, non-payment and due notice of dishonor ; the fifth and sixth are the common counts for money had and received and money paid. Besides the general issue the defendant filed many special pleas setting up the defense, in various forms, that the draft had been paid by the drawee upon presentment, that the defendant had indorsed the draft only for the purpose of identifying the payee, and not for the purpose of incurring any liability as an indorser, and want of consideration.

It will be observed that the defendant at the time of the indorsement was a stranger to the draft, and that his indorsement was not, therefore, a regular indorsement for the purpose of transfer, but purely an irregular accommodation indorsement. There is, perhaps, no subject of law upon which there has been greater diversity of opinion than that of the nature of the liability incurred by such an indorsement. But we need not

cite, nor attempt to reconcile, the various and conflicting opinions upon this question. The liability of an indorser is governed by the law of the place of the indorsement, and the liability incurred by the defendant must, therefore, be determined by the law of this State. The question has long been settled in this State, by decisions which have been steadily adhered to and followed, that such indorsements, unexplained, impose a liability on the indorser, in favor of the person against whom the indorsement is made, which is strictly analogous to the liability upon a regular indorsement.—*Marks v. First Nat. Bank*, 79 Ala. 562 ; *Hooks v. Anderson*, 58 Ala. 239 ; *Price v. Lavender*, 38 Ala. 389 ; *Jordan v. Garnett*, 3 Ala. 610 ; *Milton v. De Yampert*, 3 Ala. 648. And since the liability of an indorser is a contingent one, depending on due presentment, non-payment and notice of dishonor, if the draft in controversy was in fact and in legal contemplation paid by the drawee to the National City Bank, the agent of plaintiff for its collection, this fact constituted a complete defense to the present suit. If payment was made by mistake, or under such circumstances that the refunding of the amount paid could legally be compelled, and it was in fact refunded, these facts were proper matter for replication, or could, perhaps, be shown under issue joined on the plea of payment. The demurrers to the pleas setting up this defense were, therefore, properly overruled.

But the court below erred in overruling the demurrers to those pleas which set up the defense that the defendant indorsed the draft only for the purpose of identifying Gellhorn, the payee, and not for the purpose of incurring any liability as an indorser. These pleas show that the facts relied on to establish the defense rested in parol only. The defense was, not that the liability incurred was that of a guarantor or surety, as distinguished from that of indorser, but that no liability whatever was intended to be, or was, in fact, incurred, because the sole purpose of the indorsement was to serve as a memorandum to enable plaintiff, if necessary, to recall by whom the payee had been identified, and that this purpose was known to the plaintiff. Whether parol evidence is admissible to show that the circumstances attending the indorsement indicate an intention of the indorser to be bound only as a guarantor, surety,

or co-maker, and not as an indorser, we need not, therefore, decide. See *Hullum v. State Bank*, 18 Ala. 805; *Tiller v. Shearer*, 20 Ala. 596. It has long been settled by the decisions of this court that the legal effect of the indorsement can not be varied by parol evidence of an agreement, contemporaneously made, that the indorser of a note or bill should not be made personally liable for its payment. The specific legal import of the contract evidenced by the defendant's indorsement was, that he would pay the draft if payment should be refused by the drawee upon due presentment, and he should be duly notified of the dishonor; and this import can not be destroyed and the contract varied, even in a suit between the immediate parties to the contract, by proof that the indorsement was only for the purpose of identification:—*Day v. Thompson*, 65 Ala. 273; *Preston v. Ellington*, 74 Ala. 139; *Tankersley v. Graham*, 8 Ala. 251; 3 Rand. Com. Paper, § 1903. Such pleas, moreover, since they deny the legal effect of the indorsement, that is, deny that it was made in such manner as to be binding on the defendant, should be verified by affidavit.—Code of 1886, § 2676; *Tiller v. Shearer*, 20 Ala. 597; *Bryan v. Wilson*, 27 Ala. 208. This ground of objection was not specified in the demurrers, and, therefore, can not be considered in passing upon them. We have referred to the want of the affidavit only for the purpose of showing that the legality of the testimony as to the circumstances under which the indorsement was made must be referred to the issues under which it was offered, and can not be considered for the purpose of showing that the liability incurred by the defendant was only that of a guarantor or surety, for which purpose it would have been illegal in the absence of a sworn plea.

The court below gave the general charge in favor of the defendant, and it is earnestly contended by the appellee that the charge was properly given, because the evidence showed affirmatively, and was uncontradicted, that the draft was in fact paid by the drawee, and failed to show demand, protest and notice. The liability of an irregular accommodation indorser, when there is a valid consideration to support the indorsement, being, as we have seen, the same as that of a regular indorser, and therefore contingent upon due presentment, non-

payment and notice of dishonor, in order to charge such indorser these prerequisites to his liability must be proven.—*Marks v. First Nat. Bank*, 79 Ala. 562. When the indorsement is on a foreign bill of exchange, protest also is necessary to fix the indorser's liability. But it is well settled doctrine that if the indorser of a bill or note, with knowledge that the usual steps of demand, protest and notice have not been taken, promise to pay, this, without more, fixes his liability to the same extent as if there had been no laches on the part of the holder. *Bolling v. McKenzie*, 89 Ala. 475; *Kennon v. McRae*, 7 Port. 175; 3 Rand. Com. Paper, § 1370 *et seq.*; 2 Dan. Neg. Instr., § 1147. And facts which excuse demand and notice, or operate as a waiver of *laches* in respect to them, will, in law, be deemed proof of such demand and notice, and allegations of these facts may, therefore, be proved by showing a waiver of them.—*Manning v. Maroney*, 87 Ala. 567. It was furthermore held by this court at an early day, that a promise to pay or acknowledgment such as shows that the indorser assumes a liability, will cast upon him the double burden of proving *laches* and that he was ignorant of it.—*Kennon v. McRae*, 7 Port. 175. There is evidence tending to show that on the second or fourth day after the plaintiff had mailed the draft to the National City Bank for collection, the cashier notified defendant of the forgery, and the defendant told him "to rest easy; that we [the bank] would not lose a cent by it; to give him time;" and that subsequently Rivers wrote to the bank "agreeing to pay the money." The defendant testified that the cashier on one occasion told him that if the plaintiff had to pay, it would look to him for reimbursement, and he replied, "Mr. Urquhart, if I have to pay it, it will be mighty hard; but if I have to pay it I will do it." This was sufficient evidence of a promise to pay to require the submission to the jury of the question of *laches* in respect to presentment and notice. It is not necessary, in view of this evidence of a promise to pay, to decide whether protest of the draft was necessary in order to charge the defendant, since protest is in general excused, or *laches* in respect to it waived, by whatever will excuse, or amount to a waiver of, notice of dishonor.—*Manning v. Maroney*, *supra*; 3 Rand. Com. Paper, § 1148. Hence, if necessary in this case, the

question whether defendant had waived the *laches* was for the jury to determine. The general charge could not, therefore, have been predicated on the want of evidence of demand, protest or notice of dishonor. Nor could it have been properly based on any want of consideration to support the contract of indorsement. It was not necessary that any consideration should have moved directly to the defendant. The consideration moving to Gellhorn, the payee, was sufficient to uphold not only his promise, but also the contemporaneous contract of the indorser.—*Marks v. First Nat. Bank, supra.* There remains to be considered, then, only the question, whether the evidence that the draft had been paid by the drawee was so undisputed as to justify the general charge.

The testimony as to what occurred in New York at the time of and subsequent to the presentment of the draft to the drawee is very meager, and leaves to inference many facts which it was certainly in the power of the plaintiff to prove by positive evidence. It appears from the testimony of plaintiff's cashier that when the draft was sent by plaintiff to its correspondent, the National City Bank of New York, for collection, the amount thereof was entered to its credit in that bank, and that a week or ten days afterwards it "came back unpaid." When asked directly whether plaintiff was charged with the amount credited to it, he only replied, "The check came back to us, and when it is returned it means it is unpaid." The cashier also testified that "it is the custom of banks in returning or sending back a check to charge it to your account when it is returned to you. It is the custom of banks to return refused checks." The draft, when offered in evidence, had stamped on the back, "Note teller. PAID. Feb. 27, 1892. National City Bank, N. Y.," with pen and ink marks drawn through the words, and there was a peculiar cutting of the paper in the manner usually employed by the drawee bank to cancel a paid draft. Whether the draft was actually presented to the drawee and payment refused, or whether payment was made to the National City Bank and afterwards refunded upon the discovery of the forgery and charged back to the plaintiff, does not appear by positive testimony, but must be inferred, if found, from the facts stated and the fact of

the possession of the draft by the plaintiff. Conceding the defendant's theory that the draft was actually presented and paid, we think the above testimony, aided by certain presumptions which the law indulges from the facts stated, was sufficient to raise an issue of fact as to the payment that should have been submitted to the jury. As between the drawee, the National Park Bank, and the National City Bank, holding the draft for collection as the plaintiff's agent, if the former in fact paid the draft to the latter, the payment, assuming the draft to have been raised as alleged, would be treated in law as made under a mistake of fact, and if the latter had not in fact paid the money over to the plaintiff, but had merely credited its account with the amount, it could have been compelled to refund the money to the drawee, and having refunded it, could have charged back to plaintiff the amount credited.—*Birmingham Nat. Bank v. Bradley*, 103 Ala. 119; *National Park Bank v. Seaboard Bank*, 114 N. Y. 28; *United States Nat. Bank v. Nat. Park Bank*, 129 N. Y. 647; 3 Rand. Com. Paper, § 1486. And whatever it could have been legally compelled to do, it had the right to do without awaiting compulsion. In the ordinary course of banking business, the draft, having been paid, would have been surrendered to the drawee. But we find it in the possession of the plaintiff, stamped paid, not by the drawee, but by the plaintiff's agent for its collection, and mutilated in the manner employed by the drawee to cancel paid drafts. What inferences and legal presumptions arise from these facts? It is well settled that if a note or bill is found in the possession of one who appears to have previously transferred it, the legal presumption is that it has been *regularly* returned to him and that the title is in him, and the burden of showing the contrary is on the defendant.—*Anniston Pipe Works v. Mary Pratt Furnace. Co.*, 94 Ala. 607; *Price v. Lavender*, 38 Ala. 391; *Herndon v. Taylor*, 6 Ala. 461. Conceding that the drawee paid the draft upon presentment, it could not have been regularly returned to the plaintiff, and the title could not be in the latter, in the ordinary course of business, unless upon the discovery of the forgery, the National City Bank had refunded the money to the drawee, received the draft in return, charged back to plaintiff the amount credited, and returned the draft to

it.  The just inference from the facts proven, aided by the legal presumption, is that all these things were done. In the absence, therefore, of proof sufficient to overcome the inference and presumption, the case presented is not different in any respect from what it would have been if the plaintiff had presented the draft directly to the drawee and payment had been refused.  It follows that there was sufficient evidence of presentment, non-payment, protest, if protest was necessary, and notice of dishonor, to justify the submission of these issues to the jury, and that the court below erred in giving the general charge in favor of the defendant.

But we are of the opinion that the evidence would not justify a recovery on the common counts for money had and received and money paid.  Rivers is not shown to have had any beneficial interest in the draft, as contended by counsel, and no part of the proceeds of the draft was paid to him by the bank.  He was simply a creditor of Gellhorn, having loaned him money and taken mortgages and indorsed notes as security, and was innocent of any connection with, or complicity in, the forgery and fraud practiced by Gellhorn.  When the latter received the money on the draft, he paid to the defendant the amount due him—seven hundred and fifteen dollars—taking a receipt in full discharging the indebtedness.  The fact that Rivers knew the money was part of the proceeds of the draft, and that it was paid immediately after the cashing of the draft, is of no importance, when it is shown that he had no knowledge that the draft had been raised, and that upon the payment by Gellhorn of his debt, he discharged the same and surrendered the securities held by him.  No greater reason can exist for holding him liable for money had and received, or money paid to the extent of the seven hundred and fifteen dollars paid to him by Gellhorn, than would have existed if, instead of being paid directly by Gellhorn, the money had passed through a dozen hands and then been paid to him by an entire stranger to the transaction.  His liability is strictly that of an indorser, and not that of one to whom money has been paid under a mistake of fact.

The inquiry in the 16th cross-interrogatory to A. W. Hill, as to who was the cashier and assistant cashier of the Gate City National Bank, the drawer, at the time

[Malone, Admr. v. Arends:]

the draft was issued, was irrelevant, and the answer was calculated to work injury to the plaintiff, in the minds of any of the jury who may have known the history of the assistant cashier's connection with that bank. It does not appear, however, when the objection to the question was made, and the court can not, therefore, be put in error for overruling the objection. Inasmuch as the question itself was illegal, the objection, if not made until the deposition was read to the jury, was properly overruled.—*L. & N. R. R. Co. v. Hall*, 91 Ala. 112. In view of the issues on which the case was tried, it was competent to inquire by whom the defendant was asked to indorse the draft. The cashier of plaintiff having testified that defendant had written to plaintiff promising to pay, and the letter not having been produced, it was clearly permissible for the defendant to deny that he had so written. That part of the proceeds of the draft which was paid by Gellhorn to defendant, having been paid to discharge an indebtedness due from the former to the latter, evidence was properly admitted to show that the notes evidencing the indebtedness were secured by the indorsement of a third person, since it tended to strengthen the testimony that defendant gave value for the money paid him.

Let the judgment be reversed, and the cause remanded for further proceedings in conformity to this opinion.

Reversed and remanded.